In re Stephen Wayne **SKINNER** and Marlene McCausland Skinner, Debtors.

**UTAH STATE CREDIT UNION, Appellant,**

v.

Stephen Wayne **SKINNER,**' Marlene McCausland Skinner, Respondents.

Civ. No. C–88–49W.
Bankruptcy No. 87A–03646.

United States District Court, D. Utah, C.D.

Aug. 10, 1988.

**472**

Phillip Harding, Salt Lake City, Utah, for respondents and debtors, Stephen Skinner and Marlene Skinner.

Dale R. Kent, Salt Lake City, Utah, for appellant Utah State Credit Union.

## MEMORANDUM DECISION
## AND ORDER

WINDER, District Judge.

This matter is before the court on an appeal of a decision rendered by the bankruptcy court on December 11, 1987. The court held a hearing regarding this appeal on June 29, 1988. Dale R. Kent appeared on behalf of the appellant, Utah State Credit Union (the "Credit Union"). Phillip A. Harding appeared on behalf of the respondents and debtors, Mr. and Mrs. Skinner.

Prior to the hearing, the court had carefully reviewed the appellate briefs filed by counsel. Since the hearing, the court has thoroughly reviewed the transcript of the

evidentiary hearing held before the Honorable John H. Allen on December 9 and 11, 1987. After taking this matter under advisement, the court has further considered the law and facts, and now renders the following memorandum decision and order reversing the bankruptcy court's decision and remanding the matter for further proceedings consistent with this memorandum decision.

### Factual Background

The debtors, Stephen and Marlene Skinner, filed a petition under Chapter 7 of the Bankruptcy Code on July 16, 1987. Prior to that date, the Credit Union had repossessed from the Skinners a 1985 Oldsmobile station wagon, in which the Credit Union had a valid security interest. On the date of the Skinners' bankruptcy filing, the automobile was in the possession of the Credit Union.

On July 29, 1987, notice of the bankruptcy filing and of the first meeting of creditors was sent by a deputy clerk of the bankruptcy court to all creditors listed on the official mailing matrix. (Tr. at 40–41). The Credit Union and its post office box number were correctly listed on the mailing matrix. (Tr. at 86). The notice was sent and received by the Credit Union. (Tr. at 91). However, the exact date on which the Credit Union received notice of the Skinners' bankruptcy filing is uncertain. Based upon the evidence presented, the bankruptcy court concluded that the notice was received at the Credit Union's post office box on or about July 31, 1987. (Tr. at 120–21).

On August 4, 1987, the Credit Union sold the 1985 Oldsmobile station wagon in a commercially reasonable manner for a sale price of $7,900. (Tr. at 46, 122). However, the low book value of the automobile, considering all of the car's options, was $10,300. (Tr. at 65–68). Mrs. Schwartz was the employee responsible for reading all notices received from the bankruptcy court and alerting other Credit Union employees of bankruptcy filings. (Tr. at 75, 78–80). However, during the last week of July and

first week of August, 1987, Mrs. Schwartz was on vacation. (Tr. 90–91). The notice of the Skinners' bankruptcy finally came to the attention of Mrs. Schwartz of the Credit Union on August 6, 1987, after the sale had taken place. (Tr. at 92–93). Nevertheless, the Credit Union did not make any attempt to compensate the Skinners for any losses resulting from the sale of their vehicle after the petition date.

Subsequently, the debtors filed a motion requesting the bankruptcy court to cite the Credit Union for contempt and to award damages arising from the violation of the automatic stay. The Credit Union contested the motion. The bankruptcy court held an evidentiary hearing during which several witnesses testified over a period of two days. Based upon the evidence presented, the bankruptcy court found that the Credit Union, as a legal entity, had actual notice of the Skinners' bankruptcy filing by virtue of the bankruptcy court's sending a notice to the Credit Union's post office box and the Credit Union's receipt of the notice on or about July 31, 1987. (Tr. at 120–21). The court further concluded that the Credit Union's employees did not have any malice or actual intent to violate the automatic stay by selling the Skinners' vehicle. (Tr. at 121). Nevertheless, the court concluded that the Credit Union willfully violated the automatic stay and awarded the debtors actual damages and attorney's fees and costs in the amount of $4,617.67 pursuant to 11 U.S.C. § 362(h).[1] (Tr. at 123).

### Discussion

In reviewing the decision of the bankruptcy court, this court must accept the findings of fact of the bankruptcy court unless the findings are clearly erroneous. Bankr. Rule 8013; *In re Mullet*, 817 F.2d 677, 678 (10th Cir.1987). In addition, this court must make a *de novo* review of all legal determinations and conclusions of law. *Mullet*, 817 F.2d at 679; *In re Yeates*, 807 F.2d 874, 877 (10th Cir.1986); *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399–400 (10th Cir.1986).

---

1. The debtors' actual damages included damages due to the sale of the car and expenses

incurred in leasing a replacement automobile. (Tr. at 122).

The initial question before this court is whether the bankruptcy court erred in awarding sanctions against the Credit Union pursuant to 11 U.S.C. § 362(h). To resolve this question, this court will review whether the conduct of the Credit Union constituted a willful violation of the automatic stay as required under section 362(h) of the Bankruptcy Code. In addition, this court will consider whether a civil contempt citation is appropriate under the circumstances of this case.

*Section 362(h) Sanctions:*

■ Generally, section 362 provides an automatic stay of any and all proceedings against a debtor immediately following the filing of a bankruptcy petition. The importance of the automatic stay in bankruptcy is made clear in the legislative history of section 362:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340–42 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978); *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787 at 5840, 6296–97.

Recognizing the need to compensate and even punish for violations of the automatic stay, Congress added subsection (h) to section 362 in 1984. This provision empowers the bankruptcy court to impose sanctions for willful violations of the automatic stay. Subsection (h) provides as follows:

> (h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Pursuant to this provision, the bankruptcy court must compensate an individual[2] injured by a willful violation of the automatic stay for actual damages, including attorney's fees and costs. In appropriate circumstances, the bankruptcy court can impose punitive damages and thereby punish the individual or entity violating the stay.

■ Because section 362(h) provides broad compensatory and even punitive remedies for a violation of the automatic stay, the provision contains fairly rigid threshold requirements. In particular, subsection (h) only provides a remedy for willful violations of the stay. For purposes of section 362(h), "willful" means deliberate or intentional. *In re Advanced Professional Home Health Care, Inc.,* 82 B.R. 837, 844 (Bankr.E.D.Mich.1988); *In re Rinehart,* 76 B.R. 746, 756 (Bankr.D.S.D.1987); *In re Shafer,* 63 B.R. 194, 198 (Bankr.D.Kan. 1986).

In the present case, the bankruptcy court concluded that the Credit Union had willfully violated the automatic stay. This conclusion was based on the court's finding that the Credit Union had actual notice of the Skinners' bankruptcy filing through receipt of the bankruptcy court's notice at its post office box before the Skinners' automobile was sold. Nevertheless, the bankruptcy court found that the Credit Union's employees possessed no malice or actual intent to violate the automatic stay.

After a thorough review of this matter and giving due regard to the bankruptcy court's opportunity to judge the credibility of witnesses, this court concludes that the bankruptcy court's findings were supported by the evidence and not clearly erroneous. The evidence presented suggested that the bankruptcy notice was received at the Credit Union's post office box prior to the sale. There was no evidence to the contrary. In addition, the evidence supported the finding that the Credit Union's employees possessed no malice or actual intent to violate the automatic stay.

Nevertheless, the bankruptcy court erred in concluding that the Credit Union willful-

---

**2.** In an effort to expand the reach of subsection (h), courts have construed the term "individual" to encompass corporations and other legal enti-

ties injured by a violation of the automatic stay. *See Budget Service Co. v. Better Homes of Va., Inc.,* 804 F.2d 289, 292 (4th Cir.1986).

ly violated the automatic stay in light of its finding that the Credit Union's employees did not intend to violate the automatic stay. The Credit Union can only act through its agents and employees. In order to justify sanctions pursuant to section 362(h), the bankruptcy court had to have found that the Credit Union's agents or employees deliberately and intentionally violated the automatic stay by selling the automobile after receiving notice of the Skinners' bankruptcy filing. Accordingly, the bankruptcy court did not have a sufficient factual basis to impose sanctions pursuant to section 362(h).

Although this court must set aside the bankruptcy court's imposition of sanctions pursuant to section 362(h), this court observes that civil contempt sanctions pursuant to 11 U.S.C. § 105(a) may be appropriate under the circumstances of this case. Based upon the following analysis of the contempt powers of the bankruptcy court, this court believes that the bankruptcy court may impose civil contempt sanctions in order to compensate the Skinners for the Credit Union's violation of the automatic stay. Therefore, the court remands this matter to the bankruptcy court with instructions to further consider whether civil contempt sanctions are appropriate under the circumstances of this case.

*Civil Contempt Sanctions:*

1. History of the Contempt Power:

■ All courts have inherent contempt powers to enforce compliance with their orders. *See Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987); *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966); *Michaelson v. United States ex rel. Chicago, St. Paul, Minneapolis and Omaha Ry. Co.*, 266 U.S. 42, 65–66, 45 S.Ct. 18, 19–20, 69 L.Ed. 162 (1924); *United States v. Askew*, 584 F.2d 960, 962 (10th Cir.1978). In particular, bankruptcy courts as courts of equity have long possessed inherent contempt powers, even without statutory authorization. *In re Reed*, 11 B.R. 258, 261 (Bankr.D.Utah 1981); *see also Matter of Miller*, 81 B.R. 669, 676 (Bankr.M.D.Fla. 1988); *but cf. In re Sequoia Auto Brokers Ltd., Inc.*, 827 F.2d 1281 (9th Cir.1987).[3] The most important power of a court is its contempt power which a judge must have and exercise in protecting "the due and orderly administration of justice and in maintaining the authority and dignity of the court." *Railway Express, Inc. v. Piper*, 447 U.S. 752, 763–64, 100 S.Ct. 2455, 2462–63, 65 L.Ed.2d 488 (1980).

Although bankruptcy courts possess inherent contempt powers, Congress has limited the bankruptcy court's contempt powers in the past. *See generally, Miller*, 81 B.R. at 673–76. Originally, under the Bankruptcy Act of 1898 bankruptcy referees had no civil or criminal contempt power. Section 41(b) of the former Bankruptcy Act provided that any contempt

---

**3.** The scope of a bankruptcy court's contempt power has been hotly debated. The Ninth Circuit has held that the inherent power to cite and punish for contempt is reserved to Article III judges. *Sequoia*, 827 F.2d at 1284. However, the *Sequoia* opinion has been strongly criticized in the well reasoned opinion of Judge Paskay in *Matter of Miller*, 81 B.R. at 675–78. This court joins other courts which have respectfully rejected the *Sequoia* analysis regarding the contempt powers of the bankruptcy court. *See In re Newport Offshore, Ltd.*, 88 B.R. 566 (Bankr.D. R.I.1988) (decision and order); *In re Hamilton Allied Corp.*, 87 B.R. 43 (Bankr.S.D.Ohio 1988) (decision and order); *In re Stephen W. Grosse, P.C.*, 84 B.R. 377, 385–88 (Bankr.E.D.Pa.1988); *Miller*, 81 B.R. at 675.

Prior to the *Sequoia* case, various district courts and bankruptcy courts had concluded that bankruptcy courts were authorized to exercise civil contempt powers. *See Kellogg v. Chester*, 71 B.R. 36 (N.D.Tex.1987); *Better Homes of Va., Inc. v. Budget Service Co.*, 52 B.R. 426 (D.Va.1985), *aff'd*, 804 F.2d 289 (4th Cir.1986); *In re Haddad*, 68 B.R. 944 (Bankr.D.Mass.1987); *In re McLean Industries, Inc.*, 68 B.R. 690 (Bankr.S.D.N.Y.1986); *In re Elegant Concepts, Ltd.*, 67 B.R. 914 (Bankr.E.D.N.Y.1986); *In re L.H. & A. Realty, Inc.*, 62 B.R. 910 (Bankr.D.Vt. 1986); *In re Crabtree*, 39 B.R. 702 (Bankr.E.D. Tenn.1984). On the other hand, some district courts have stated that the civil contempt power is an essential attribute of Article III courts that may not be delegated to bankruptcy courts. *In re Continental Air Lines, Inc.*, 61 B.R. 758, 773 (S.D.Tex.1986); *In re Industrial Tool Distributors, Inc.*, 55 B.R. 746, 751 (N.D.Ga.1985); *In re Omega Equipment Corp.*, 51 Bankr. 569, 573 (D.C.1985); *In re Mab Foods, Inc.*, 49 B.R. 73 (E.D.N.Y.1985).

committed before the referee had to be certified to a district judge.

In 1973 the Supreme Court, pursuant to its rule making powers under 28 U.S.C. 2075, approved proposed Rule 920. This rule became effective on October 1, 1973 after Congress did not veto the rules promulgated to replace the General Orders, previously governing bankruptcy practice and procedure. Rule 920 expressly recognized the power of the bankruptcy judge to impose sanctions for civil contempt. Nevertheless, the judge could not impose a fine exceeding $250.00 or a term of imprisonment.

As part of the Bankruptcy Reform Act of 1978, which restructured the bankruptcy system, Congress enacted 28 U.S.C. § 1481.[4] This provision implicitly recognized the inherent contempt powers of a bankruptcy judge but placed a limitation on the judge's contempt powers. Section 1481 provided that while the bankruptcy court has full and complete jurisdiction in law, equity and admiralty, it had no power to enjoin another court or to punish a criminal contempt not committed in the presence of the judge or warranting punishment by imprisonment.

Following the decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*,[5] invalidating the jurisdictional grant by the Bankruptcy Reform Act of 1978, the Supreme Court nevertheless adopted the final draft of the rules governing bankruptcy practice and procedure under the Bankruptcy Reform Act of 1978. The Rules became effective August 1, 1983, after Congress approved them. Bankruptcy Rule 9020, entitled "Criminal Contempt Proceeding," provided for the summary disposition by a bankruptcy judge of criminal contempt committed in his or her presence. Bankr. Rule 9020(a)(1) (1983). Subclause (2) of Rule 9020 authorized the bankruptcy judge to punish for criminal contempt not committed in the judge's presence after notice and a hearing. Subclause (3) required the certification of facts regarding a contempt to the district court in the event a term of imprisonment was warranted.

In response to the *Marathon* decision, Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Amendments"). Under the 1984 Amendments to the Bankruptcy Code, bankruptcy courts are defined as units of the district courts and may exercise all jurisdiction of the district courts if the district court grants a general reference pursuant to 28 U.S.C. § 157(a).[6] The 1984 Amendments are silent on the subject of contempt and include no provisions corresponding to former 28 U.S.C. § 1481, which was part of the Bankruptcy Reform Act of 1978 but omitted by the 1984 Amendments.

Nevertheless, the current version of the Bankruptcy Code implicitly recognizes the inherent contempt powers of the bankruptcy court in section 105(a). Section 105(a) authorizes the bankruptcy court's issuance of "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).[7]

---

4. 28 U.S.C. § 1481 provided:

 A bankruptcy court shall have the powers of a court of equity, law and admiralty, but may *not enjoin another court or punish a criminal* contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment.

5. 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

6. The United States District Court for the District of Utah issued a general order of reference pursuant to 28 U.S.C. § 157(a) on July 10, 1984. *See* Rule B–105 of the District Court Rules of Bankruptcy Practice and Procedure (hereinafter referred to as "Local Rules").

7. Section 105 reads in its entirety:

 (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

 (b) Notwithstanding subsection (a) of this section, a court may not appoint a receiver in a case under this title.

 (c) The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities

In addition, the Supreme Court has adopted and Congress has approved Bankruptcy Rule 9020, effective August 1, 1987. As currently amended, Bankruptcy Rule 9020 authorizes a bankruptcy judge to summarily adjudge a civil or criminal contempt committed in the judge's presence. Bankr. Rule 9020(a). Regarding civil or criminal contempt committed outside the presence of the judge, the bankruptcy judge can determine and enter a contempt order which will become final if not timely objected to. Bankr. Rule 9020(b). Bankruptcy Rule 9020, as amended, has no certification requirements and thus recognizes the inherent powers of the bankruptcy judge to determine civil or criminal contempt. However, Rule 9020(b) permits the parties to object to the bankruptcy court's contempt order regarding a contempt committed outside the courtroom and, thus, gain a right to a *de novo* review by the district court of the contempt proceedings.

The Advisory Committee noted in regard to the 1987 amendment to Bankruptcy Rule 9020 that the rule recognizes that a bankruptcy judge may not have the power to punish for a contempt. *See* 1987 Advisory Committee Note. Indeed, by its General Order of Reference, the Utah District Court has not referred to the bankruptcy judges the power to punish for a civil or criminal contempt by imprisonment. Local Rule B–105(c). As a result, bankruptcy judges in this district cannot render a final order imposing a term of imprisonment for the purpose of punishing a contempt of court.

In summary, the Supreme Court and Congress have eliminated limitations previously imposed on the contempt powers of bankruptcy judges by adopting and approving Bankruptcy Rule 9020. Congress has also enacted section 105(a) and not included any limitations on the contempt powers corresponding to former 28 U.S.C. § 1481 in the current version of the Bankruptcy Code. Section 105(a) and Bankruptcy Rule 9020 recognize the inherent contempt powers of a bankruptcy judge and the necessity for contempt sanctions to protect the orderly administration of justice and to maintain the dignity of the court.

2. Procedures for Adjudicating a Contempt:

In this district, a bankruptcy judge can impose civil or criminal contempt sanctions by following the procedure outlined in Bankruptcy Rule 9020. Bankruptcy Rule 9020 provides as follows:

### CONTEMPT PROCEEDINGS

(a) *Contempt Committed in Presence of Bankruptcy Judge.* Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.

(b) *Other Contempt.* Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge, that judge is disqualified from presiding at the hearing except with the consent of the person charged.

(c) *Service and Effective Date of Order; Review.* The clerk shall serve forthwith a copy of the order of contempt on the

conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28. This subsection shall not be interpreted to exclude bankruptcy judges and other officers or employees appointed pursuant to chapter 6 of title 28 from its operation.

entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files with the clerk objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.

(d) *Right to Jury Trial.* Nothing in this rule shall be construed to impair the right to jury trial whenever it otherwise exists.

■ Prior to entering a citation for contempt, the bankruptcy court must determine whether a contempt should be classified as civil or criminal. The difference between a civil or criminal contempt depends on what primary objective the court desires to achieve through sanctions or sentencing. *Shillitani,* 384 U.S. at 370, 86 S.Ct. at 1535; *Reed,* 11 B.R. at 266. The primary purpose of a civil contempt sanction is to compensate losses sustained by another's disobedience to a court order and to compel future compliance with court orders. In contrast, the primary purpose of a criminal contempt sentence is to punish the defiance of a court's judicial authority through a fine or imprisonment. *Ager v. Zane C. Stormont Hospital,* 622 F.2d 496, 499–500 (10th Cir.1980).

### a. *Civil Contempt:*

Any civil contempt committed in the presence of the court can be determined and sanctioned summarily by the bankruptcy judge. Bankr. Rule 9020(a). A bankruptcy judge may censor, impose monetary sanctions or impose another appropriate civil remedy for any civil contempt occurring in his or her presence.

In contrast, a bankruptcy judge can only determine and sanction a civil contempt occurring outside the courtroom after proper notice and a hearing. Bankr. Rule 9020(b). Following the hearing and entry of a civil contempt order pursuant to Rule 9020(b), the individual or entity charged with contempt shall have ten days from service of the order to make a formal objection to the order pursuant to Bankruptcy Rule 9033(b). If a timely objection is made, the bankruptcy court shall transmit the contempt order and objection to the district court for a *de novo* review of the contempt proceeding pursuant to Rule 9033(d). If no objection is filed in regard to the bankruptcy court's civil contempt order, the order will become final when the time period for an objection has expired.

### b. *Criminal Contempt:* [8]

■ Whether a bankruptcy judge has the power to punish a criminal contempt is a question invoking considerable controversy. *See In re Sequoia Auto Brokers, Ltd., Inc.,* 827 F.2d 1281 (9th Cir.1987) (bankruptcy courts do not possess inherent or statutory contempt powers); *Matter of Miller,* 81 B.R. 669, 678 (Bankr.M.D.Fla. 1988) (Bankr. Rule 9020 permits bankruptcy court to punish a contempt). If a bankruptcy court does have the power to punish a contempt through a fine or imprisonment, Bankruptcy Rule 9020 provides a procedure for criminal contempt proceedings.

Nevertheless, by local rule, this district court has restricted bankruptcy judges from punishing a contempt with a term of imprisonment. Local Rule B–105(c). However, if a bankruptcy judge believes imprisonment is appropriate in a particular circumstance of contempt, the bankruptcy court may certify the facts to a district court judge pursuant to Local Rule B–113(b) and thereby initiate contempt proceedings in the district court. *Cf. In re Sasson Jeans, Inc.,* 83 B.R. 206 (Bankr.S. D.N.Y.1988). Local rules do not restrict bankruptcy judges from punishing a contempt with a fine. In view of the bankruptcy judge's inherent contempt powers and the absence of statutory limitations on these powers under present bankruptcy legislation, bankruptcy courts of this dis-

---

**8.** The court recognizes that the following discussion concerning criminal contempt does not pertain to the subject directly at issue but serves to further distinguish the procedural differences between civil and criminal contempt adjudications.

trict can impose fines for criminal contempt violations.[9]

*Civil Contempt Sanctions for Violations of the Automatic Stay:*

 When the automatic stay has been violated, the bankruptcy court may impose civil contempt sanctions under Code section 105(a) and Bankruptcy Rule 9020. In general, a civil contempt citation is an extraordinary remedy and is only appropriate when the automatic stay has been violated by a party having actual knowledge of the automatic stay. *Matter of Hailey,* 621 F.2d 169, 172 (5th Cir.1980). In order for a party to be cited for civil contempt, a court must find that the party violated a specific and definite court order and that the party had knowledge of the order sufficient to put him on notice of the proscribed conducted. *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 51 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *see also Yates v. United States,* 316 F.2d 718, 723 (10th Cir.1963).

 Nevertheless, the disobedience in a civil contempt need not be willful because the purpose of civil contempt sanctions is remedial. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949). As a result, the showing required for civil contempt sanctions in connection with a violation of the automatic stay is less stringent than the showing required for sanctions under section 362(h). *In re Tel–A–Communications Consultants, Inc.,* 50 B.R. 250, 253 (Bankr.D. Conn.1985).

 Sanctions for a civil contempt serve the purpose of compensating the injured party for damages sustained by reason of the noncompliance and of coercing future compliance with court orders. *See McComb,* 336 U.S. at 191, 69 S.Ct. at 499. A court may award sanctions in the amount of actual loss sustained by the injured party. *See United States v. United Mine Workers of America,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701–02, 91 L.Ed. 884 (1947); *Reed,* 11 B.R. at 276. In addition, sanctions for a civil contempt may include attorney's fees and costs. *Perry,* 759 F.2d at 704–06; *Commodity Futures Trading Commission v. Premex, Inc.,* 655 F.2d 779, 785 (7th Cir.1981); *In re Burrow,* 36 B.R. 960 at 966 (Bankr.Utah 1984).

1. Sale of the Repossessed Car:

 In order for the bankruptcy court to impose civil contempt sanctions against the Credit Union for selling the repossessed car after the Skinners' petition date, the bankruptcy court must find that the Credit Union had actual knowledge of the automatic stay before it sold the car. After a two day evidentiary hearing, the bankruptcy court found that the Credit Union had actual notice of the Skinners' bankruptcy by reason of receiving the bankruptcy notice in its post office box on or about July 31, 1988. However, the evidence showed that no employee of the Credit Union actually read the contents of the notice until after the Skinners' car was sold.

Although an employee of the Credit Union had not read the contents of the bankruptcy notice, actual knowledge of the automatic stay can be constructively attributed to the Credit Union. *See In re Thacker,* 24 B.R. 835, 838–39 (Bankr.S.D.Ohio 1982); *Reed,* 11 B.R. at 272–74; *cf. also* 58 Am.Jur.2d *Notice* § 6 (1971).[10] The evidence showed that the bankruptcy notice was received at the Credit Union's post office box prior to the sale. The notice was enclosed in an envelope from the bankruptcy court which effectively placed the employees on notice to make further inquiry into what the notice concerned.

9. The power to impose a fine for a criminal contempt is not that different from the power to impose sanctions pursuant to various code sections and procedural rules. *See* 11 U.S.C. §§ 303(i)(2), 362(h), and 523(d); and Bankruptcy Rules 9011, 7037. The *Miller* court has observed that the distinction between the power to impose a fine for contempt and the power to impose a sanction is one without a difference because the end result and premise underlying the result are the same. *Miller,* 81 B.R. at 678.

10. Constructive notice is the law's substitute for actual notice and is inferred from established facts. 58 Am.Jur.2d *Notice* § 6 at 489 (1971).

██ In the context of bankruptcy, once notice of a bankruptcy is communicated to creditors, either directly or indirectly, the burden is placed on the creditors to decide the parameters of permissible conduct against the debtor. *Reed,* 11 B.R. at 274. Ordinarily, it is not practical to place the burden of informing creditors of the automatic stay on the debtor. Creditors have the greater responsibility for discovering the existence of the automatic stay by watching for bankruptcy notices and making inquiries at the bankruptcy clerk's office.[11]

In the present case, the Credit Union had the responsibility to promptly read the bankruptcy notice received at its post office box. Upon discovering the existence of the automatic stay, the Credit Union had the obligation to take expeditious steps to curtail all collection efforts against the Skinners. The Credit Union cannot avoid actual knowledge of the Skinners' bankruptcy filing by allowing a six-day delay in opening its mail.

Under these circumstances a court can attribute constructive knowledge of the automatic stay to the Credit Union. Pursuant to Code section 105(a), the bankruptcy court can cite the Credit Union for civil contempt arising from its decision to sell the Skinners' vehicle in a collection effort after receiving notice of the Skinners' bankruptcy petition. Because the Skinners' estate sustained a loss by reason of the Credit Union's violation of the stay, civil contempt sanctions are appropriate to compensate the estate for the losses incurred.

██ The bankruptcy court has properly measured the damages arising from the Credit Union's sale of the car in violation of the automatic stay. The Skinners' bankruptcy estate lost at least the difference between the low book value and the sales price of the automobile. In addition, rental car expenses and attorney's fees and costs should be reimbursed as further compensatory damages. Consequently, this court believes that an award of compensatory damages in the sum of $4,617.67 would be reasonable. Any additional compensatory damages, including expenses for an appeal, are within the discretion of the bankruptcy court.

2. Failure to Restore the Status Quo:

██ All collection activities of creditors are null and void if taken after the filing of a bankruptcy petition. *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th Cir.1982). Such actions are void even if the creditor had no notice of the bankruptcy petition. *Stephen W. Grosse,* 84 B.R. at 383. Once a creditor has been informed of a violation of the stay, the creditor has an obligation to restore the status quo and undo his post-petition collection actions. *Miller,* 22 B.R. 479 at 481 (D.Md.1982). Imposing such a duty relieves the financially strapped debtor from having to initiate legal action to recover property or damages. *Id.*

██ When a creditor fails to restore the status quo, the creditor retains an improved position over other creditors. The retention of the benefits gained by violating the stay is itself a continuing violation, and if done knowingly, is grounds for contempt. *In re Miller,* 10 B.R. 778, 780 (Bankr.D.Md.1981).

██ In the present case, the Credit Union has failed to restore the status quo after acknowledging its violation of the automatic stay. Whether the Credit Union had knowledge of the stay at the time of the sale is immaterial to this inquiry. More importantly, the Credit Union has been aware of the Skinners' bankruptcy petition for some time and has refused to pay for the losses resulting from the sale of the Skinners' vehicle. These losses include the loss of value when the car was sold, rental car expenses, and attorney's fees and costs expended by the Skinners to recover these damages, including this appeal.

**11.** The bankruptcy court clerk makes available to creditors a complete index of all bankruptcy petitions. Bankr. Rule 5003(d).

Under these circumstances, civil contempt sanctions are also appropriate in view of the Credit Union's refusal to restore the status quo after selling the vehicle in violation of the automatic stay. *In re Miller*, 22 B.R. 479 (D.Md.1982). The Credit Union's refusal to restore the status quo is a continued violation of the automatic stay and a contempt of court. The appropriate amount of civil contempt sanctions is within the sound discretion of the bankruptcy judge.

### Conclusion

In accordance with the above discussion, this court concludes that the bankruptcy court incorrectly imposed sanctions under 11 U.S.C. § 362(h) against the Credit Union. Although this court reverses the bankruptcy court's decision, this matter is remanded to the bankruptcy court with instructions to impose civil contempt sanctions, within its discretion, in accordance with this memorandum decision. The previous ruling of the bankruptcy court is hereby vacated.

Accordingly, IT IS HEREBY ORDERED that the bankruptcy court's ruling is reversed and the matter remanded in accordance with this memorandum decision.