**In re Bobby and Leyon BRATTON, Debtors.**

**Bobby BRATTON, Plaintiff,**

v.

**MITCHELL, WILLIAMS, SELIG, JACKSON & TUCKER et al., Defendants.**

**Civ. No. 90–3026.**

United States District Court, W.D. Arkansas, Harrison Division.

June 21, 1990.

Art Dodrill, Stephen L. Gershner, Charles D. Davidson, Davidson Law Firm, William M. Griffin, III, Friday, Eldredge & Clark, Little Rock, Ark., for plaintiff.

James Glover, Wright, Lindsey & Jennings, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Before the court is an order entered by United States Bankruptcy Judge James G. Mixon holding Art Dodrill guilty of crimi-

nal contempt on two separate occasions during a hearing held on February 12, 1990. Dodrill was summarily assessed a total fine of $100.00 payable by 6:00 p.m. on February 12, 1990. When Dodrill refused to pay the fine alleging he did not have the money he was remanded to the custody of the United States Marshal until such time as the fine was paid. The record does not reflect the amount of time Dodrill was in custody.

## I. FACTS AND PROCEEDINGS BELOW

The February 12, 1990, hearing concerned a motion for sanctions filed on behalf of Charles D. Davidson and the Davidson Law Firm, Ltd. The motion sought sanctions against Dodrill and Bobby Bratton for alleged violations of Bankruptcy Rule 9011. A second similar motion filed on behalf of Mitchell, Williams, Selig & Tucker was also before the court.

Judge Mixon's order entered February 26, 1990, details the factual matters leading up to the two findings of criminal contempt and constitute the court's findings of fact pursuant to Bankruptcy Rule 9033. The actual findings of contempt concerned two specific acts committed in the presence of the court on February 12, 1990. However, Judge Mixon States:

> The order of summary contempt entered on February 12, 1990, was the culmination of numerous acts of derisive and contumacious behavior that has disrupted the judicial process throughout the proceedings in this case and that threatened to continue to disrupt the judicial process unless immediate action was taken. The specific findings of contempt concerned two specific acts committed in the presence of the Court on February 12, 1990. These acts occurred despite repeated warnings and admonitions of the Court at hearings conducted in this proceeding over the past year.

Thereafter, Judge Mixon sets forth numerous examples of allegedly inappropriate acts occurring at hearings held April 6, 1989, April 7, 1989, April 10, 1989, May 11, 1989, May 15, 1989, June 26, 1989, August 30, 1989, October 6, 1989, and December 18, 1989. Excerpts from the records for these hearings indicate that Dodrill repeatedly made derogatory remarks about the other lawyers accusing them, *inter alia,* of: "collusion, a conspiracy, if you will; a matter of Rico proportions;" of being embezzlers; accomplices; liars; and of perpetrating a fraud upon the court. Dodrill did not limit his remarks to the conduct of other attorneys, but rather also chose to attack the integrity of the court. Remarks made along this line include statements such as: "it would be wrong and inequitable and unjust for the court to allow this continuing travesty of justice to continue"; "Your Honor, it appears that you have been acting as a defense lawyer for the Mitchell Law Firm ..."; "It was simply another example of the court's bias is the way it looked to me; that—that this was only a—a collusion between this court and Mr. Davidson"; "And furthermore, I tell you—uh—where there's fraud worked upon the court to merely use this court as a rubberstamp for their malfeasance...."

Remarks similar to these occurred during the ten hearings from which portions of the record were excerpted. These remarks continued after repeated admonitions from the court to conduct himself in a professional· manner. Additionally, Judge Mixon on more than one occasion advised Dodrill that if he continued to make derogatory and unprofessional remarks toward opposing counsel and the court he would be cited for contempt.

On February 12, 1990, the first contempt citation occurred in response to the following colloquy:

MR. TAYLOR: Let me hand you what I have marked as Plaintiff's Exhibit 2, which had been admitted. Can you identify that document?

MR. GRIFFIN: Yes. It's a statement from our law firm for services rendered through 12/6/89.

MR. TAYLOR: And why were you originally hired or retained in this proceeding?

MR. GRIFFIN: When Mr. Dodrill sued the Davidson Law Firm, I was retained to

represent Skip Davidson and the Davidson Law Firm and defend them in the adversarial proceeding.

MR. TAYLOR: And are these fees and expenses that relate to your defense of that law firm and the defense of your firm and that law firm?

MR. GRIFFIN: Yes.

MR. TAYLOR: And that would be in the context of this bankruptcy proceeding that's currently before the Court?

MR. GRIFFIN: Yes.

MR. TAYLOR: And would you give me the amount of your fees?

MR. DODRILL: Objection, Your Honor. I would ask—

THE COURT: Stand up when you address the Court, Mr. Dodrill.

MR. DODRILL: Excuse me, Your Honor. I would objection to that, Your Honor, because it—I haven't had a chance to scrutinize it and I haven't had a chance to have it itemized.

THE COURT: Objection overruled.

Did you file a discovery request for the document, Mr. Dodrill?

MR. DODRILL: Your Honor, forgive me, that question, and I don't want to get myself in trouble.

THE COURT: Just answer my question.

MR. DODRILL: I have found that filing anything in this Court is entirely futile.

THE COURT: Mr. Dodrill, you're in contempt of Court—

MR. DODRILL: Your Honor, forgive me.

THE COURT: —and you're fined $50.

MR. DODRILL: Your Honor, I'm saying— no, Your Honor, it's just I haven't been— there's no way I can do anything in this Court, Your Honor. I apologize.

THE COURT: If you say one more word about it, it will be a hundred dollars. We'll take a break at nine, at 10:00, Mr. Dodrill, you'll pay the clerk of the Court $50. I will not tolerate any more comments about the Court or any of the lawyers or anything else.

MR. DODRILL: Your Honor, I apologize, Your Honor. Please allow me to withdraw that, Your Honor. It's just a frustration that I have had to deal with in this Court and please allow me to apologize.

THE COURT: Your apology is accepted. The fine will stand. Have a seat.

MR. DODRILL: Your Honor, I—

THE COURT: Mr. Dodrill, sit down.

The second contempt citation occurred a short time later when Dodrill was forty-five minutes late after a recess. At that time, the following occurred:

THE COURT: ... Let's go ahead and take a break. Mr. Dodrill, you go down to Ms. Carroll and you pay your $50 fine and you bring me a receipt. And then we'll start back here at a quarter after.

MR. DODRILL: Your Honor, could I ask for a continuance on that? I don't have the money now. What would you charge me to serve out the time in jail? I mean, how—could I get $50 for a day? I apologize, Your Honor, and ask you to—humbly ask you to withdraw that. It was not my intention to make some furor out of it. It's just that I have had—as this will develop here—a part of their pleadings in this case is the Court's orders saying there was no embezzlement.

THE COURT: Where is your checkbook, Mr. Dodrill?

MR. DODRILL: I don't have it.

THE COURT: Where is it?

MR. DODRILL: I don't have that much money in the bank, Your Honor. And, Your Honor, I beg the Court to withdraw that and allow me to continue or allow Bratton to continue because it has just been one of these situations where there's been a great deal of hostility towards me by the Court, towards Mr. Bratton.

THE COURT: Mr. Dodrill, careful.

MR. DODRILL: Forgive me, Your Honor.

THE COURT: I'll tell you what we'll do. I don't want to delay the trial. We'll go ahead and we'll continue the trial. And then we'll take this matter up of whether or not you ought to be incarcerated in lieu of the $50 at the end of the trial.

MR. DODRILL: Okay. I appreciate it.

THE COURT: You might try to raise the money during the day.

MR. DODRILL: Give me the break and see what I can do.

THE COURT: You might ought to make a phone call because I have no intention of backing out.

MR. DODRILL: How much do you credit a person per day for time in jail?

THE COURT: I don't know. I have never had this come up.

MR. DODRILL: Okay, Your Honor, try to be generous because I work at a high rate.

THE COURT: Try to get $50, Mr. Dodrill, or you might just very find yourself in jail.

MR. DODRILL: I appreciate it, Your Honor. Thank You.

(Court in Recess)

THE COURT: Court's back in session. Mr. Bratton, where did Mr. Dodrill go?

MR. BRATTON: He went to his office.

THE COURT: Went to his office?

MR. BRATTON: Yes.

THE COURT: When is the last time you talked to him?

MR. BRATTON: About five minutes or 10 minutes before—I walked down the street with him a ways. He went on to the office to pick stuff up. He said to tell you he would be back.

THE COURT: Okay. We're just in recess until he gets here.

(Court in Recess)

THE COURT: Court's back in session. Mr. Dodrill.

MR. DODRILL: I apologize, Your Honor. I was out. And I find they are about to cut my phone off and all. I do not have the money, Your Honor. And I humbly request you to accept my apology with no intention whatever to disrupt the proceedings or to obstruct justice in any manner whatever. I humbly ask you to accept my apology in regard to that.

THE COURT: I will accept your apology, but I will not accept your characterization that it was not designed to disrupt. You have been gone 45 minutes.

MR. DODRILL: Oh, no, in regard to this, Your Honor, I got back as fast as I could, Your Honor. And I had to run down to my office and back and it almost killed me doing that. And I did it as fast as possible. And wasn't doing anything to—except trying to get back to Court. I had to go all the way to past Louisiana Street to get back. And didn't any way—

THE COURT: I'm sure you're aware how far it is from here to your office and how long it would take you to go there and return. And you must have known that you could not possibly do all that in the time that we were going to take a short recess. I find you in contempt of Court again, a second time. That's another $50. And that's a hundred.

Now, Mr. Dodrill, if you don't have a hundred dollars, you had better get busy over the noon hour and find somebody who will loan it to you or go to a bank or somewhere, because I am deadly serious. You have backed me into a corner now and I can't get out. And you will pay the money, and you'll pay it today, or else I will have you locked up.

MR. DODRILL: Yes, Your Honor.

THE COURT: Do you understand? And I don't want any more disruptive conduct in this trial. I don't want you disappearing. I don't want you talking rudely to me or the lawyers or anybody else. You conduct yourself like an attorney and like a gentleman or it will cost you more and more money.

MR. DODRILL: I thought I had time, Your Honor. And I ran there as fast as I could.

THE COURT: You couldn't have possibly thought you had time. You couldn't possibly. You have been gone 45 minutes.

MR. DODRILL: Your Honor, I have been running as fast as I could. And the Court told me to go to my office. And I was following the Court's admonition to do that. And I got back just as fast as I possibly could.

THE COURT: I did not tell you to go to your office, Mr. Dodrill. Have a seat. You are in contempt of Court.

You understand how much you owe now? Mr. Dodrill?

MR. DODRILL: I beg your pardon.

THE COURT: Do you understand how much you owe?

MR. DODRILL: I beg Your Honor, no, Your Honor.

THE COURT: One hundred dollars.

MR. DODRILL: What for, Your Honor?

THE COURT: I just explained it to you. For contempt, two contempts this morning. One hundred dollars. All right. Go ahead.

Record at 137–40.

THE COURT: ... Mr. Dodrill, I want to caution you again about the unpleasantness of this morning. You say you don't have a hundred dollars. You need to get a hundred dollars to pay to the clerk by the close of business today. If you have got to borrow it or hock your watch, get it from a. friend, or however you get it, because I intend to follow through with the sanction. And if I—and I have never incarcerated anybody ever in my life, but you may well be the first one if you push me to it over a hundred dollars.

MR. DODRILL: No, Your Honor. I humbly beg your apology and ask you to recognize that none of it was intentional whatever as any respect to you personally or to your offices as judge and that I would certainly ask you to forgive me and that no—nothing whatever was intended to be disrespectful to you personally or to the Court. And I beg you to not put me in jail, because I was simply—it was no (sic) intentional. None of it was and I know that you construed it that way and that was not my intent. I know that certainly the relations between yourself and this cause of action has been very acrimonious throughout the whole matter, Your Honor. And I certainly would beg you to reconsider and to—

THE COURT: I choose not to reconsider, Mr. Dodrill. You're the only lawyer in my entire experience that I have ever threatened with contempt in each hearing, just about. Maybe we missed one or two. But each hearing that we got to

that point because of your remarks about the Court, about me personally matters not, but about this office it does matter. And your disrespect to this Court and your disrespect to the other members of the bar. We went over it. And I threatened you and threatened you and threatened you. And I never—

MR. DODRILL: It would never happen again.

THE COURT: Listen to me. I never carried forward with it. Today you have crossed the Rubicon. Get a hundred dollars or you will be in the pokey tonight. I just wanted you to know that over the noon hour.

In summary Judge Mixon states:

In the presence of the Court, Dodrill refused to obey and did consistently disobey the orders and directions of this Court regarding his conduct. The warnings and admonitions directed to Dodrill were reasonably specific, and his refusal to comply with the Court's orders disrupted and frustrated the ongoing proceedings. No measures short of the contempt citations would have been effective to deter his continued contemptuous conduct.

The contempt order states that "this order of contempt shall become effective as a final order ten days after service of the order on Dodrill unless, within the ten day period, Dodrill serves and files with the Bankruptcy Clerk objections to this order as provided by Bankruptcy Rules 9020 and 9033(b). If objections are filed, this order shall be subject to review by the District Court pursuant to Bankruptcy Rule 9033." Dodrill filed objections on March 8, 1990, and amended objections on March 9, 1990. Accordingly, the contempt order and the objections thereto were referred to this court.

Dodrill's objections include assertions that the bankruptcy court lacked statutory and constitutional authority to exercise civil and/or criminal contempt power.[1] Among other assertions Dodrill alleges

---

1. Judge Mixon's order clearly stated he found Dodrill guilty of criminal contempt. Accordingly, Dodrill's objections to the Bankruptcy Court's exercise of civil contempt powers need not be addressed.

that the order fails to; 1) adequately recite facts constituting contempt; 2) set forth a definite time frame for imprisonment; and 3) failed to provide him with notice and a hearing as is required by Bankruptcy Rules 9020 and 9033.[2] Dodrill further notes that the court order "exerts selected portions of selected hearings, such editing omits examples of the underlying bias of Judge Mixon." Dodrill further states:

> Judge Mixon's bias against Bratton's action was manifest at one of the early hearings wherein he ruled that a lawyer testifying against Bratton need not be sworn because "lawyers tell the truth."

> From the beginning of AP 89–98 it was plain that Bratton could not receive a fair trial from one such as Judge Mixon because he had made clear that he had a mind-set to believe Bratton's adversaries.

> Dodrill submits that the voice recording will reflect that the transcript is not accurate.

> Regarding the second conviction of criminal contempt Judge Mixon's excerpt does not show that Dodrill was no more than five minutes late.

Finally, Dodrill contends it was error for Judge Mixon to deny a motion for recusal.

Dodrill states, and the docket reflects, that an order of contempt was entered by Judge Mixon on February 12, 1990. Subsequently, on February 26, 1990, the contempt order presently before the court was entered.

## II. DISCUSSION

This case presents important issues regarding the power of bankruptcy courts to exercise criminal contempt powers. The scope of the bankruptcy courts' contempt powers is currently a hotly debated issue. Decisions in this area are conflicting and leave bankruptcy judges with little guidance in circuits where the issue has not been definitely resolved. Unfortunately the Court of Appeals for the Eighth Circuit does not appear to have directly confronted this issue.

The first circuit court decision in this area appears to be the decision of the Ninth Circuit in *In re Sequoia Auto Brokers Ltd.*, 827 F.2d 1281 (9th Cir.1987). In that case the court held that bankruptcy courts did not have inherent power to issue contempt orders. Specifically, the court held that the contempt power is inherent in Article III courts but not in Article I courts. *Id.* at 1284. It was noted that "article I bankruptcy judges can enforce compliance with their orders by resorting to Article III courts." *Id.* citing 28 U.S.C. § 157(c)(1); *Omega Equip. Corp. v. John C. Louis Co.*, 51 B.R. 569, 573 (D.D.C.1985)

Next, the court, noting there was no express statutory grant of contempt powers to bankruptcy judges considered whether such power should be implied.[3] After examining the historical background of the bankruptcy acts the court concluded that there was no implied grant of contempt authority in 28 U.S.C. § 157 and 11 U.S.C. § 105. Additionally, the court found Bankruptcy Rule 9020 to be inadequate authority for the grant of contempt authority, since it was expressly based on sections repealed by the 1984 amendments. *Id.* at 1288–89.

In conclusion the court held that:

> Congress had not conferred the civil contempt power on bankruptcy judges. We conclude that the bankruptcy judge had

---

**2.** Other objections concern whether the entire proceeding was properly before the bankruptcy court. Dodrill contends the matter is not a core proceeding and that the reference to the bankruptcy court was unconstitutional. These arguments will not be addressed. If Dodrill believed the reference was inappropriate, the appropriate action would have been to file a motion to withdraw reference pursuant to 28 U.S.C. § 157(d).

**3.** The 1978 Act expressly granted bankruptcy courts civil and criminal contempt powers, subject to the limitations of 28 U.S.C. § 1481 and 28 U.S.C. § 1826. *See Sequoia*, 827 F.2d at 1287. Section 1481 was repealed by 1984 Amendments following the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *See also Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 781 N. 4 (8th Cir. 1987) (bankruptcy court does not exceed its jurisdiction by following 9020(a)(3) procedures for certification, but basis of contempt authority is Section 1481 which is no longer effective).

no jurisdiction to issue the contempt order. Therefore, the bankruptcy court judge must, as under earlier bankruptcy procedure, certify the facts to the district court to review *de novo* and determine whether to issue the order.

*Id.* at 1291. *See also Gonzales v. Parks,* 830 F.2d 1033, 1036 N. 7 (9th Cir.1987). *But see In re Indus. Tool Distributors, Inc.,* 55 B.R. 746, 749–50 (N.D.Ga.1985) (statutory authority to issue civil contempt powers exists pursuant to 28 U.S.C. § 157(a) but criminal contempt orders are necessary only to vindicate the dignity of the bankruptcy court and thus are not orders to effectuate the Bankruptcy Code. Accordingly, the court held the bankruptcy judge lacks statutory authority to enter a criminal contempt order).

Several courts have held that bankruptcy courts have inherent civil contempt powers. *See e.g., In re Skinner,* 90 B.R. 470 (D.Utah 1988); *In re Kennedy,* 80 B.R. 673 (D.Del.1987); *In re Miller,* 81 B.R. 669, 676 (N.D.Fla.1988). Others have held that the authority is found in the broad grant of authority found in 11 U.S.C. § 105(a). *See, e.g.,. In re Walters,* 868 F.2d 665, 670 (4th Cir.1989) ("[D]elegation of civil contempt power to the bankruptcy courts by 11 U.S.C. § 105(a) does not offend the Constitution.... [W]e do not address any question of criminal contempt...."); *In re Dennig,* 98 B.R. 935 (N.D.Ind.1989); *In re Clark,* 91 B.R. 324 (E.D.Pa.1988). *Haile v. New York State Higher Educ. Services Corp.,* 90 B.R. 51, 53–54 (W.D.N.Y.1988). This grant of authority is said to be bolstered by the language of Bankruptcy Rule 9020 which provides:

### Rule 9020. Contempt Proceedings

**(a) CONTEMPT COMMITTED IN PRESENCE OF BANKRUPTCY JUDGE.** Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.

**(b) OTHER CONTEMPT.** Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge, that judge is disqualified from presiding at the hearing except with the consent of the person charged.

**(c) SERVICE AND EFFECTIVE DATE OF ORDER; REVIEW.** The clerk shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files with the clerk objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.

**(d) RIGHT TO JURY TRIAL.** Nothing in this rule shall be construed to impair the right to jury trial whenever it otherwise exists.

*See Matter of Dennig,* 98 B.R. 935, 938–39 (N.D.Ind.1989). The advisory committee note to the 1987 amendment of Rule 9020 notes:

[T]his rule, as amended, recognizes that bankruptcy judges may not have the power to punish for contempt. Sound judicial administration requires that the initial determination of whether contempt has been committed should be made by the bankruptcy judge. If timely objections are not filed to the bankruptcy judge's order, the order has the same force and effect as an order of the district court. If objections are filed within 10 days of service of the order,

the district court conducts a *de novo* review pursuant to Rule 9033 and any order of contempt is entered by the district court on completion of the court's review of the bankruptcy judge's order.

Other Article I courts have been statutorily granted limited powers of contempt. *See* 10 U.S.C. § 848 (limits on exercise of contempt by military courts); 26 U.S.C. § 7456(c) (limits tax court's exercise of criminal contempt powers); Guam Civ.Pro. Code §§ 1209–22 (limits contempt power in territorial court); 2 U.S.C. §§ 192 and 194 (Congress has limited its own contempt powers). *See also* 28 U.S.C. § 636(e) (Federal magistrates have no power of contempt themselves but must certify the facts to the district court to determine whether the conduct warrants punishment. The acts constitute contempt of the district court for the district wherein the magistrate is sitting.)

In a recent ruling the Court of Appeals for the Fifth Circuit held that the bankruptcy court lacked statutory authority to try criminal contempts. *Matter of Hipp, Inc.,* 895 F.2d 1503, 1509 and 1521 (5th Cir.1990) (court did not reach the substantial constitutional concerns surrounding the utilization of criminal contempt powers by non-Article III judges). The actual holding concerned a criminal contempt citation issued for contemptuous behavior committed outside the presence of the bankruptcy judge. *Id.* at 1509. The court held this type of criminal contempt was governed by 18 U.S.C. § 401(3) and Fed.R.Crim.P. 42(b) and must be before the district court. *Hipp,* 895 F.2d at 1505. Thus, the courts actual holding does not govern situations, such as the one involved herein, where the contemptuous behavior is committed in (or near) the court's presence. *Id.* at 1509.

In *Hipp* the Fifth Circuit thoroughly reviewed the historical use of contempt powers by the courts as well as the present controversy regarding the authority of Article I bankruptcy courts to utilize this power. *See also In re Skinner,* 90 B.R. 470

(D.Utah 1988) for a thorough historical analysis. In *Skinner* the court concluded that bankruptcy courts had civil contempt powers pursuant to 11 U.S.C. § 105(a). Section 105(a) authorizes the bankruptcy court's issuance of "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." It was further noted that "by its General Order of Reference, the Utah District Court had not referred to the bankruptcy judges the power to punish for a civil or criminal contempt by ·imprisonment." *Skinner,* 90 B.R. at 477.[4]

The *Skinner* court concluded that the bankruptcy court could in accordance with Rule 9020(a) summarily impose sanctions for civil contempt committed in its presence. For civil contempt occurring outside the courtroom the bankruptcy court could only determine and sanction the contempt after notice and a hearing. Bankr.Rule 9020(b). Following the entry of the contempt order the party has ten days to make formal objections. If objections are made the matter is referred to the district court for *de novo* review. *Skinner,* 90 B.R. at 478. The court further noted that the bankruptcy court could impose fines for criminal contempt but could not impose imprisonment due to the restrictions placed on contempt powers by the local rules. *Skinner,* 90 B.R. at 478–79.

### III. CONCLUSION

■ After having examined the decisional law in this area, the court concludes that the bankruptcy court does not have the power to enter a criminal contempt sanction which includes imprisonment without the intervention of the district court. Although the alleged contemptuous actions were committed in the court's presence, the contempt order entered on February 12, 1990, resulted in Dodrill being remanded to the custody of the United States Marshal Service. Thus, the order was carried out the same day. The subsequent contempt order issued February 26, 1990, attempts to

---

**4.** The General Order of Reference applicable to Arkansas District Courts does not contain reference to contempt powers.

**438**

utilize the procedures set forth in Rule 9020 and states that it will "become effective as a final order ten days after service of the order on Dodrill unless, within the ten day period, Dodrill serves and files with the bankruptcy clerk objections. . . ."

In this instance utilization of this procedure came too late. Dodrill had been immediately remanded to the custody of the marshal upon his failure to pay the fine by 6:00 p.m. on February 12, 1990. To say that the order was not final when made is to attempt to ignore that the order had *in fact* already been carried out.

■ Accordingly, we hold that the bankruptcy court lacked the authority to impose imprisonment without first utilizing the procedure set out in Rule 9020. We caution that we do not address the bankruptcy court's power to impose civil contempt sanctions or to utilize criminal contempt sanctions if those sanctions are limited to fines. We only address the narrow situation before the court. Therefore, the criminal contempt order entered by the bankruptcy court is vacated.

■ However, this conclusion does not end the matter. The court believes that the method utilized in *In re Indus. Tool Distributors, Inc.*, 55 B.R. 746, 750 (N.D. Ga.1985) should be and will be utilized in this instance. The court will proceed as if the bankruptcy court had utilized Rule 9020 and certified the facts to this court for entry of a criminal contempt sanction. Accordingly, the court directs Dodrill to appear the week of August 13, 1990, at the call of the court to show cause why he should not be held in criminal contempt.

A separate order in accordance herewith will be concurrently entered.