**In the Matter of Thomas William DENNIG, Dolores Waechter Dennig, Debtors.**

**Bankruptcy No. 87–30952 HCD.**

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

April 18, 1989.

Chet Zawalich, South Bend, Ind., for movant.

James Masters, South Bend, Ind., for debtor.

## MEMORANDUM OF DECISION

HARRY C. DEES, Jr., Bankruptcy Judge.

This matter is before the court on Trustcorp Bank's ("Bank") VERIFIED SECOND MOTION FOR HOLDING DEBTOR IN CONTEMPT FOR FAILURE TO COMPLY WITH COURT'S ORDER filed on March 1, 1989. The relief the Bank seeks is for the court to hold the debtors in contempt for their failure to comply with the court's order dated November 9, 1988 and further, that as a sanction for the contempt the Bank requests relief from the automatic stay and reimbursement of attorney fees. The matter came on for hearing on March 23, 1989. For the reasons set out below the court finds the debtors in contempt of court for failure to comply with the court's November 9, 1988 order and directs the debtors to reimburse the Bank the amount of $260.69 for actual and reasonable attorney fees and expenses expended by the Bank to enforce the November 9, 1988 order. The court DENIES the Bank's request to sanction the debtors by giving the Bank relief from the automatic stay in that on the date of the hearing on the instant motion, the debtors had turned over to the Bank the entire proceeds of their tax refund as ordered by the court on November 9, 1988.

### Jurisdiction

Although parties have neither consented to nor objected to the subject matter jurisdiction of the court over the Bank's motion to find the debtors in contempt and for sanctions the court must nevertheless set out its jurisdiction.[1] The court would be remiss if it failed to acknowledge the split among the courts on the issue of whether a bankruptcy judge has civil contempt powers. *Plastiras v. Idell (In re Sequoia Auto Brokers Ltd., Inc.)*, 827 F.2d 1281, 1284 (9th Cir.1987) (concluding that bankruptcy judges do not have civil contempt power); *Burd v. Walters (In re Walters)*, 868 F.2d 665, 669 (4th Cir.1989) (concluding that 11 U.S.C. § 105(a) authorized the bankruptcy judge to utilize civil contempt

---

1. "Lack of subject matter jurisdiction can be raised by a court's own motion at any time, and can be raised for the first time on appeal. *See, e.g., City of Kenosha v. Bruno*, 412 U.S. 507, 511–12, 93 S.Ct. 2222, 2225–26, 37 L.Ed.2d 109, 115 (1973). The Supreme Court in *City of Kenosha* stressed that it is the duty of the federal courts to assure themselves that their jurisdiction is not being exceeded." *Csibi v. Fustos*, 670 F.2d 134, 136 n. 3 (9th Cir.1982).

powers to enforce compliance with its orders).

The debate centers around the lack of clear statutory authority granting contempt power to bankruptcy judges. This controversy springs from the fact that bankruptcy judges, unlike other federal judges, sit in non-Article III courts. One line of cases argues that contempt power is an exclusive power of Article III courts[2] while the opposing cases argue that there is inherent contempt power in every court.[3] These views, however, are not based on interpretation of Supreme Court decisions[4] but stem from divergent views regarding powers of the court.[5]

While it is undisputed that an Article III court has inherent power to enforce its lawful orders by exercising its contempt powers the controversy over the alleged limitation of that power to Article III courts has diluted or in some cases, denied that power to bankruptcy courts which are non-Article III courts. However, a learned treatise in the area of bankruptcy law,[6] as well as various courts,[7] have suggested that the contempt powers may be conferred on the bankruptcy courts by 11 U.S.C. § 105(a).[8]

It is true that the Bankruptcy Reform Act of 1978 [9] by enactment of 28 U.S.C. § 1481,[10] prohibited the bankruptcy judge

---

**2.** "[T]he contempt power is an attribute of the judicial power of Article III and cannot be vested in a non-Article III court because the 'judicial power of the United States' cannot be vested in such a court. Those cases which referred to the inherent power of contempt in a bankruptcy court in fact referred to the power of the *district court* constituted as the bankruptcy court and as the repository of bankruptcy jurisdiction. The broad power to punish for contempt is 'inherently judicial' and therefore not delegable by Congress to a non-Article III court. Allowing the bankruptcy court to exercise this fundamental Article III power would undermine the very premises underlying that Article of our Constitution. Broad contempt powers are an exclusive Article III prerogative." *James v. Cryts (In re Cox Cotton Company),* 24 B.R. 930, 956 (E.D. Ark.1982).

**3.** "[T]here is nothing unconstitutional in the grant of a contempt power to the bankruptcy court. There is inherent in the power of every court the power to stay proceedings in order to control the disposition of cases on its docket. *See, Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936) (Cardozo, J.). This principle should follow regardless of whether the court is a state or federal court, and regardless of whether, if a federal court, it is a special court or one of limited jurisdiction." *Johns–Manville Sales Corp. v. Doan (In re Johns–Manville Corp.),* 26 B.R. 919, 924 (Bankr.S.D.N.Y.1983).

**4.** "The power to punish for contempts [sic] is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently to the due administration of justice. The moment the courts of United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power." *Ex Parte Terry,* 128 U.S. 289, 303, 9 S.Ct. 77, 79, 32 L.Ed. 405 (1888) (quoting *Ex*

*Parte Robinson,* 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1873); *see also, Michaelson v. United States,* 266 U.S. 42, 65–66, 45 S.Ct. 18, 19–20, 69 L.Ed. 162 (1924) (no specific statute is necessary to invest a court with contempt power; specific legislation, rather, restricts the power of contempt (discussing the Clayton Act, October 15, 1914, §§ 21, 22, c. 323, 38 Stat. 738)).

**5.** Weiss, *Contempt Power of the Bankruptcy Court,* 6 Bankruptcy Developments J. 205, 236–40 (1989).

**6.** 2 *Collier on Bankruptcy* (MB) ¶ 150.03 at 105–10 to 13 (15th ed. supp. Sept. 1988).

**7.** *Miller v. Mayer (In re Miller),* 81 B.R. 669, 673 (Bankr.M.D.Fla.1988); *Gibbons v. Haddad (In re Haddad),* 68 B.R. 944, 953 (Bankr.D.Mass.1987); *Hamilton Allied Corp. v. Kerkau Manufacturing Co. (In re Hamilton Allied Corp.),* 87 B.R. 43, 45 (Bankr.S.D.Ohio 1988).

**8.** 11 U.S.C. § 105. Power of court.
(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

**9.** Bankruptcy Reform Act of 1978, Pub.L. No. 95–598 § 241.

**10.** 28 U.S.C. § 1481 (1978)
A bankruptcy court shall have the powers of a court of equity, law, and admiralty, but may not enjoin another court or punish a criminal contempt not committed in the presence of the judge of the court or warranting a punishment of imprisonment.

from punishing criminal contempts not committed in his presence, but it has also been argued that this same section increased the bankruptcy court's power to deal with civil contempt.[11] The most recent contempt power controversy was fueled by the now landmark case of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,*[12] wherein the Supreme Court held the Congressional grant of general jurisdiction to the bankruptcy courts was an "... unconstitutional delegation of Article III powers to a non-Article III court."[13] While the Supreme Court did not specifically address the constitutionality of the contempt powers of the bankruptcy court, the decision was enough to stimulate unrest and debate.

The Congressional response to *Marathon* was the Bankruptcy Amendments and Federal Judgeship Act of 1984[14] ("1984 Amendments") which attempted to repeal 28 U.S.C. § 1481. Because Section 113[15]

of the 1984 Amendments provided that 28 U.S.C. § 1481 "shall not be effective" and Section 121[16] of the 1984 Amendments stated that Section 1481 "shall be effective" prospectively on July 10, 1984,[17] the bankruptcy courts were again in a state of confusion as to the existence of contempt powers. However, most courts have held that Section 1481 was effectively repealed by the 1984 Amendments.[18]

■ The holding by the 4th Circuit in *Walters* that the broad grant of authority for the bankruptcy court set out in 11 U.S.C. § 105(a)[19] encompasses the power of contempt is persuasive and will be adopted by the court. *Walters,* 868 F.2d at [669].[20] While Congress did not specifically grant contempt powers to the bankruptcy court in § 105(a), the existence of the authority based on the language of § 105(a) is bolstered by Congress's enactment of Bankruptcy Rule 9020[21] in its current form. The key language is set out in

11. Comment, *In re Krisle: Civil Contempt Power of the Bankruptcy Court,* 31 S.D.L.Rev. 273, 275–76 (1986).

12. 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

13. Comment, *supra,* n. 12, at 278–79; *See also, supra,* n. 13 at 87.

14. Pub.L. No. 98–353, 98 Stat. 333 (1984).

15. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 113, 98 Stat. 333, 343 (1984).

16. *Id.,* at § 121, 98 Stat. at 345.

17. The enactment date of the 1984 Amendments.

18. *Tele–Wire Supply Corp. Presidential Financial Corp., Inc. (In re Industrial Tool Distributors, Inc.),* 55 B.R. 746, 749 n. 6 (N.D.Ga.1985).

19. *See, supra,* n. 9.

20. *See, supra,* n. 2.

21. Bankruptcy Rule 9020. Contempt Proceedings

(a) CONTEMPT COMMITTED IN PRESENCE OF BANKRUPTCY JUDGE. Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.
(b) OTHER CONTEMPT. Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge, that judge is disqualified from presiding at the hearing except with the consent of the person charged.
(c) SERVICE AND EFFECTIVE DATE OF ORDER; REVIEW. The clerk shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files with the clerk objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.
(d) RIGHT TO JURY TRIAL. Nothing in this rule shall be construed to impair the right to jury trial whenever it otherwise exists.

section (c) of Rule 9020 which states "[T]he order [of contempt issued by the bankruptcy court] shall be effective 10 days after service of the order and shall have the same force and effect as an order entered by the district court unless, within the 10 day period, the entity named therein serves and files with the clerk objections prepared in the manner provided in Rule 9033(b)." Bankr.R. 9020(c). If such a timely objection is filed, the bankruptcy court is to certify the contempt question to the district court for a *de novo* review. *Id.*

Regardless of the source of the contempt power, the real issue is whether the Bank is entitled to relief as the result of the debtors' contumacious behavior. This concept was succinctly set out by Judge Paskay in the *Miller* case[22] where he explained:

> Thus, if a debtor is entitled to any relief, the same must be accorded by resorting to a contempt proceeding based either on the inherent power of the bankruptcy court and to sanction for civil contempt or by resorting to some other specific provision of the Bankruptcy Code or to a Bankruptcy rule which might be utilized to accomplish the same result.

*Miller*, 81 B.R. at 673.

■ In the motion at hand, the Bank is seeking a finding by the court that the debtors are in contempt as well as asking for sanctions. This request is one for a finding of civil contempt as distinguished from criminal contempt. The sanction is remedial or compensatory in nature, in that the Bank wishes to be compensated for damages caused by the debtors' acts of disobedience.[23]

The court finds that it has subject matter jurisdiction, adopts the reasoning set out by the 4th Circuit in *Walters*[24], and in so doing rejects the 9th Circuit's findings in *Sequoia Auto Brokers*.[25]

*Discussion*

Now that the court has overcome the jurisdiction hurdle the issues are uncomplicated and the facts undisputed. As the result of a stipulation by the parties concerning adequate protection, the court entered an order on November 9, 1988 which stated in pertinent part:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that such stipulation shall be deemed this Court's order of adequate protection as to the Bank's mortgage liens identified in its motion for relief from automatic stay filed on November 10, 1987. Further, the Trustee herein, is ordered to refund to the Debtors 100% of the income tax refund it received by way of voluntary payment and the Debtors are ordered to pay 100% of said income tax refund to the Bank immediately upon receipt of said funds from the Trustee.

Order, dated November 9, 1988 at 1.

The Trustee, Tedd E. Mishler, Esq., stated that he turned over the tax refund check in the amount of $3,614.00 to the debtors on December 19, 1988 by way of first class mail. The debtors were to have endorsed the check to the Bank and to have delivered the same. As of December 27, 1988, the Bank had not yet received the payment and filed its MOTION FOR ORDER HOLDING THE DEBTORS IN CONTEMPT FOR FAILURE TO COMPLY WITH COURT'S ORDER OF NOVEMBER 9, 1988. A hearing on the matter was held on February 2, 1989, at which time the debtors turned over $3000.00 of the refund to the Bank. The debtors were given two weeks to turn over the remaining $614.00 to the Bank.

As the result of the debtors' failure to turn over the remaining $614.00, the Bank filed the instant motion. A hearing was held on March 23, 1989 at which time the debtors turned over the remaining $614.00 to the Bank.

22. *See, supra*, n. 8.

23. *Weiss, supra* n. 6 at 211; *see also, Walters*, 868 F.2d at 668 (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949)).

24. 868 F.2d 665 (4th Cir.1989).

25. 827 F.2d 1281 (9th Cir.1987).

 "Determining if a party has committed civil contempt involves essentially only consideration of whether the party knew about a lawful order and whether he complied with it." *Walters*, 868 F.2d at [670].[26] The court sees no evidence that would suggest that the debtors were unaware of the court's November 9, 1988 order and it is obvious from the Bank's instant motion, that the debtors failed to comply with the order. In fact, the debtors' compliance was coerced by the Bank's motions for contempt. The fact that the debtors have now turned over all funds due and owing to the Bank from the tax refund is irrelevant to a finding of contempt.

The court finds that the debtors' contumacious behavior in failing to comply with this court's order of November 9, 1988 warrants a finding of contempt, and the court so finds. *Walters*, 868 F.2d at [669].[27]

 The final issue is that of sanctions. The Bank has requested that the court grant it relief from the automatic stay as well as to order the debtors to reimburse the Bank for attorney fees expended in enforcing the court's November 9, 1988 order. While the court sympathizes with the Bank's frustration over the debtors' apparent indifference to the court's November 9, 1988 order, the court does not find that this conduct on the part of the debtors justifies relief from the stay.

 However, the court cannot ignore the debtors' conduct and the damages to the Bank. Counsel for the Bank filed an AFFIDAVIT IN SUPPORT OF ATTORNEY FEES on March 23, 1989, wherein he set out the actual fees and expenses rendered on behalf of the Bank in pursuing the debtors' compliance with the court's November 9, 1988 order. The affidavit requests $400.00 in attorney fees and expenses but the attached itemization of attorney fees and expenses shows only $255.00 in attorney fees,[28] $2.09 for long distance phone calls and $3.60 for "copies."

The court finds that the Bank is limited to reasonable compensation for actual and necessary services rendered by the attorneys for the Bank. That amount, the court finds, includes $255.00 for attorney fees and $5.69[29] for expenses for a total of $260.69.

### Conclusion

Accordingly, the court finds that the debtors knew about the court's November 9, 1988 order and failed to comply with that order. The court further finds that the Bank incurred expenses from its attorney to pursue the debtors' compliance with the November 9, 1988 order in the amount of $260.69. The court finds that this amount is reasonable compensation for actual and necessary services rendered to the Bank by its attorneys.

SO ORDERED.

---

**26.** *See, supra*, n. 2.

**27.** *See, supra*, n. 2.

**28.** Three hours at $85.00 per hour for attorney time.

**29.** $2.09 phone calls + $3.60 copies = $5.69.