In re Nicholas Paul ESPOSITO, Jr.
and Auburn Manona
Esposito, Debtors.

**Bankruptcy No. 88–1985–8P7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 13, 1990.

Salem, Saxon & Nielson, P.A., Tampa, Fla., for debtors.

Siu L. Ma, San Francisco, Cal., for Cota Auto, Inc.

Lawrence Kleinfeld, St. Petersburg, Fla., trustee.

## ORDER ON DEBTORS' MOTION FOR CIVIL CONTEMPT

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is a Motion filed by Nicholas Paul Esposito, Jr. and Auburn Manona Esposito, his wife, (Debtors) who seek an Order from this Court finding Cota Auto, Inc. (Cota) in contempt and punishing it accordingly. At the duly scheduled final evidentiary hearing, the following facts relevant to the issues raised by the Motion were established and are as follows:

On April 8, 1988 the Debtors filed their Joint Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. The Statement of Financial Affairs submitted by the Debtors reveals that prior to the commencement of the case, the Debtors were engaged in the business of selling automobile parts at retail, and operated their business under the trade name of "Foreign Car Body Parts." The business commenced in 1982 and the Debtors, while operating the business, purchased parts from Cota on open account. According to the A–3 schedule of unsecured creditors submitted by them with their Petition, at the time of the commencement of the case, they were indebted to Cota in the amount of $15,000. The record further reveals that on July 13, 1988 the Debtors obtained their general bankruptcy discharge.

On July 11, 1990 the Debtors filed the Motion for Civil Contempt which is the matter under consideration. It is the contention of the Debtors that subsequent to the entry of discharge, Cota attempted to collect a prepetition discharged debt in violation of Section 524 of the Bankruptcy Code. On July 17, 1990, this Court entered an Order on the Debtors' Motion directing Cota to appear before the undersigned to show cause, if it had any, why it should not be held in contempt based on the facts alleged by the Debtors in their Motion. The record as established at the final evidentiary hearing reveals the following facts relevant to the matter under consideration.

Prior to August 1988, Phillip Lin, president of Cota, promised Mr. Esposito that Cota would reinstate their previous business relationship and sell the Debtors parts on open account provided they paid $8,000 toward their pre-petition obligation to Cota which had been discharged. In August of 1988, after the Debtors obtained their discharge, Cota informed Mr. Esposito that a container of parts had been shipped from Taiwan to Miami and would be released to Mr. Esposito provided he paid the sum of $8,000 toward his prepetition, already discharged obligation. Between August and November of 1988, the Debtors did, in fact, pay Cota the total sum of $8,000 in four installments of $3,000, $2,000, $2,000 and $1,000, respectively. (Debtors' Exh. No. 1).

In reliance of the assurance of Mr. Lin, Mr. Esposito then traveled to Miami in order to locate the container which was supposed to have the parts provided by Cota. When he failed to locate the container, he contacted the shipping agent who informed him that the ship which was to bring the container, the Ever Genius, did not have any merchandise destined to be delivered to the Debtors. Notwithstanding, the Debtors also received a facsimile transmission dated October 27, 1988, from Latina International Co., Ltd. (Latina), the parent company of Cota, informing the Debtors that on November 3, 1988 specific merchandise would be shipped to them via the Ever Genius (Debtors' Exhibit 2). Mr. Esposito never received a satisfactory explanation from either Cota or Latina, and as of today has not received any of the merchandise whatsoever, notwithstanding the fact that he paid a total sum of $8,000 in partial satisfaction of the debt which had been discharged in bankruptcy.

Further, in reliance upon their understanding with Cota, and with the assistance of a previously secured creditor, the Debtors reopened the business after discharge and obligated themselves to pay rent for a warehouse. Unfortunately, these expenses were not established with competent proof and it is impossible to determine on this record how much damage the Debtors did suffer as the result of Cota's conduct. It appears that the Debtors agreed to pay one third of any recovery from Cota to the law firm hired by the Debtors for the representation in this matter. However, there is no question that the Debtors incurred expenses in connection with this matter and incurred obligations to pay for services of counsel engaged by them in order to protect their rights granted to them by the general bankruptcy discharge.

Cota failed to present any evidence to contradict these facts established at the trial. Counsel for Cota claimed that it was the understanding between the parties that Cota would not ship any merchandise to the Debtors unless the prepetition obligation owed to it was paid in full. In the absence of proof, this Court rejects this proposition and is satisfied that Cota merely used its promise to resume its business relationship with the Debtors and sell merchandise to them on open account for the purpose of extorting a repayment of the Debtors' prepetition debt. This record leaves no doubt that the action by Cota was nothing more than subterfuge and an underhanded act to collect a discharged obligation of these Debtors by the false promises. The effect of discharge is dealt with in § 524 of the Bankruptcy Code which provides:

§ 524. **Effect of discharge.**

(a) A discharge in a case under this title—

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an

act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. . . .

■ Since the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA), the power of the Bankruptcy Courts to punish for contempt has been the subject of much litigation. It has long been recognized and it is elementary that a willful and knowing violation of a valid order of a Court which has jurisdiction of the subject matter is civil contempt, and that the party who is injured by the violation is entitled to be made whole for his injuries. It has been long recognized that all courts have an inherent power to enforce compliance with lawful orders entered by them. *See Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987); *Michaelson v. United States ex rel. Chicago, St. Paul, Minneapolis and Omaha Ry. Co.,* 266 U.S. 42, 65–66, 45 S.Ct. 18, 19–20, 69 L.Ed. 162 (1924); *United States v. Askew,* 584 F.2d 960, 962 (10th Cir.1978).

■ Notwithstanding this general proposition, whether the Bankruptcy Court has civil contempt power, not being an Article III Court, has been subject to disagreement. Thus, in the case of *In re Sequoia Auto Brokers, Ltd., Inc.,* 827 F.2d 1281 (9th Cir.1987), the Court of Appeals for the Ninth Circuit held that bankruptcy judges do not have statutory or inherent civil contempt power. On the other hand, since *Sequoia,* several courts, including this Court, have held that a bankruptcy court not only has an inherent power to find one in civil contempt, but has such power by virtue of § 105 of the Bankruptcy Code. *Matter of Miller,* 81 B.R. 669 (Bankr.M.D. Fla.1988); *In re Walters,* 868 F.2d 665 (4th Cir.1989); *In re Dennig,* 98 B.R. 935 (Bkrtcy.N.D.Ind.1989); *In re Newport Offshore, Ltd.,* 88 B.R. 566 (Bankr.D.R.I.1988); *In re Grosse,* 84 B.R. 377 (Bkrtcy.E.D.Pa. 1988), *aff'd* 96 B.R. 29 (E.D.Pa.), *aff'd* 879 F.2d 857 (3d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 501, 107 L.Ed.2d 504 (1990) (unpublished opinion). Section 105 as amended in 1986 provides:

## § 105. Power of court

(a) The court may issue any order, process or judgment that is necessary to appropriate to carry out the provisions of this title.

Thus, this Court is satisfied that it has the inherent power and an implied statutory power pursuant to § 105 of the Bankruptcy Court to find one in civil contempt and punish accordingly. Moreover, Bankruptcy Rule 9020 adopted by the Supreme Court and approved by Congress expressly sets forth the procedure for dealing with civil contempt in the bankruptcy court and provides in subclause (b) that the contempt committed in a case or proceeding pending before a bankruptcy judge may be determined by the bankruptcy judge after notice and hearing.

■ Based on the foregoing this Court is satisfied that Cota is guilty of civil contempt and it is appropriate to impose a fine to compensate the Debtors for injuries suffered in the total amount of $8,000, the sum paid by the Debtors to Cota, and an additional $1,000 in attorneys fees.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Civil Contempt be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that, as required by Bankruptcy Rule 9020, the Clerk shall forthwith serve a copy of this Order in the manner required by law on counsel for Cota and on Cota and unless written objection is interposed to the findings within ten (10) days from the date of entry of this Order, this Order of contempt shall be deemed to be final and the Debtors may enforce these provisions in the manner provided by law if the fine is not paid within ten (10) days of the date on which this Order becomes final.

DONE AND ORDERED.