In re Ronald Allan VOGT, Gwendolyn June Vogt, Debtors.

Ronald Allan Vogt and Gwendolyn June Vogt, Plaintiffs,

v.

Dynamic Recovery Services, Defendant.

Bankruptcy No. 94–22171 RJB.

Adversary No. 00–1288 CEM.

United States Bankruptcy Court, D. Colorado.

Dec. 6, 2000.

Stephen E. Berken, Denver, CO, for debtors.

## ORDER ON MOTION FOR DEFAULT JUDGMENT

CHARLES E. MATHESON,
Bankruptcy Judge.

*INTRODUCTION*

This matter is before the Court on the Plaintiffs' motion for default judgment. The Court has considered the arguments and brief of counsel and enters the following order and judgment.

*BACKGROUND*

The Plaintiffs filed this adversary proceedings alleging that the Defendant extracted payment of a debt that had been discharged in the Plaintiffs' earlier bankruptcy proceeding by promising to withdraw or amend a credit report that showed the debt to still be owing. No answer to the complaint was filed by the Defendant. The matter came before the Court on the Plaintiffs' application for the entry of default judgment.

The entry of default judgment in a case of this nature is not an automatic, ministerial function. This is not a case where the Plaintiffs' claims are for a sum certain. Further, the legal basis for the claims is not entirely clear. Pursuant to Fed.R.Civ.P. 55(b), as made applicable to adversary proceedings by Fed.R.Bankr.P. 7055:

If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper. . . .

In accordance with that provision, and in response to the motion for default judgment, the Court set a hearing. The notice of hearing stated:

The complaint raises claims under 11 U.S.C. § 524 and under the Fair Debt Collection Act § 1692, et seq. The damages are unliquidated and uncertain. Further, the basis for this Court's jurisdiction to accord relief under the Fair Debt Collection Act is unclear. Accordingly, it is

ORDERED, that a hearing will be held ... at which time the Plaintiffs may appear and present such evidence as Plaintiffs considers (sic) appropriate in support of their claims. Plaintiffs shall further, at that time be prepared to demonstrate to the Court the jurisdictional basis by which the Court may grant such relief.

At the time set for the hearing Plaintiffs' counsel appeared. The Plaintiffs were not present. No evidence in support of the complaint was offered. Instead, counsel made an offer of proof which consisted primarily of a recitation of the facts alleged in the complaint.

The Plaintiffs seek damages and an award of attorney fees. At the hearing, and in the notice setting the hearing, the Court raised the question of whether the Plaintiffs are entitled to recover such fees. The Plaintiffs requested, and were granted, time to file a further legal brief on this issue. The minute order granting that request states that the Plaintiffs were "afforded opportunity to file brief on the nature of 524 relief along with affidavits in support of damages and fees by November 15, 2000."

On November 15, the Plaintiffs' brief was filed. However, no affidavits in support of damages was submitted. Instead, the Plaintiffs pray for another hearing at which they are to present an economist or CPA to testify as to the additional interest paid by the Plaintiffs due to the wrongs of the Defendant, and the testimony of the Plaintiffs as to the collection efforts and

misrepresentations of the Defendant, together with an affidavit regarding fees, all evidence that the Court would have expected to have heard at the initial hearing. The matter now stands submitted on the brief.

## DISCUSSION

As is often the case in consumer bankruptcy proceedings, matters that appear on their face to be simple and straightforward turn out to be inordinately complex. Such is the case with the instant proceeding.

■ Some things are simple to deal with. The Plaintiffs have asserted, in their First Claim for Relief, a claim premised on the Fair Credit Collection Practices Act, 15 U.S.C. § 1692 ("Act"). It is asserted that the Defendant engaged in fraudulent collection activity in violation of that Act, giving rise to a claim for damages. Pursuant to the provisions of that Act, attorney fees may also be awarded.

■ This is a court of limited jurisdiction. The jurisdictional limits are those specified in 28 U.S.C. § 1334(b). Pursuant to that section, and by the order of reference entered by the district court pursuant to 28 U.S.C. § 157(a), this Court has original, but not exclusive, jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11.

The factual scenario that is alleged occurred long after the Plaintiffs' discharge was entered and their bankruptcy case closed. To the extent that the activities of the Defendant that are complained of involve the Plaintiffs' discharge, such would be an act that at least relates to, if not arises out of, their bankruptcy case. Such a claim would fall within the jurisdiction of this Court.

■ The fact that the same set of facts gives rise to a statutory remedy under the Fair Debt Collection Practices Act, or under applicable provisions of state law, does not mean that this Court has jurisdiction over the claims premised on those provisions. Those claims stand alone, separate from the underlying bankruptcy proceeding, and could have been asserted by the Plaintiffs regardless of their bankruptcy case. Thus, the Court has concluded that it does not have jurisdiction to hear or adjudicate the First Claim for Relief that is premised on the Act and, accordingly, that claim must be dismissed without prejudice to the right of the Plaintiffs to assert those claims in another court of competent jurisdiction.

As to the Second Claim for Relief, brought under allegations that the acts of the Defendant violated the injunctive provisions of section 524(a)(2) of the Code, the initial question is whether any remedy is available for a violation of those provisions. None is explicitly provided for by the statute.

There are many cases that find that there is a remedy, and that remedy is one of civil contempt. Indeed, it is civil contempt cases that the Plaintiffs rely on in asserting that they have a right to a remedy of damages, plus punitive damages and fees.

There is a problem with the application of these cases. First, this is not a contempt proceeding. There has been no motion filed by the Plaintiffs for an order to show cause to issue. There has been no notice to the Defendant that a claim of contempt is being considered, or whether the contempt is civil or criminal. Fed. R.Bankr.P. 9020. What is before the Court is strictly an adversary proceeding.

■ That the adversary proceeding has been filed instead of a contempt proceeding under Rule 9020 is, no doubt, largely attributable to this Court's opinion in *In re Hunter,* 190 B.R. 118 (Bankr.D.Colo.1995). There the Court opined, in considering the application for a contempt citation premised on an alleged violation of the stay provided for in section 362(a) of the Code, that contempt would not lie for the violation of a statutory injunction. Contempt is only available for conduct that violates an

order or process of the court. *Accord, In the Matter of Rimsat, Ltd.*, 208 B.R. 910 (Bankr.N.D.Ind.1997). *But see, In re Aspen Limousine Service, Inc.*, 198 B.R. 341 (D.Colo.1996) (holding that contempt is an available remedy to punish violations of section 1125 of the Code). Regardless, the proceeding now before the Court is not one premised on a contempt citation. It is a lawsuit seeking damages for the Defendant's alleged violation of the statutory injunction mandated by section 524(a)(2).

■ The second perplexing problem is that section 524 of the Code does not contain any remedy for a violation of its provisions. This factor might not be particularly troublesome, but for the fact that the parallel stay provision of section 362 does contain an explicit remedy for a violation of the 362(a) stay. But, that remedy is limited to cases involving an "individual" debtor who is injured by a willful violation of the stay. 11 U.S.C. § 362(h). Because of this limiting factor, some courts have held that there is no remedy available for a corporate debtor that has suffered injury because of a stay violation. *In re Chateaugay Corp.*, 920 F.2d 183 (2d Cir.1990). If that case, and others like it, are correct, then it is difficult to extrapolate a remedy for a violation of the statutory stay under section 524.

■ Notwithstanding the limiting language of section 362(h), other courts have fashioned an implied remedy under section 105 of the Code. *In re Skinner*, 917 F.2d 444 (10th Cir.1990); *In re Atlantic Business & Community Corp.*, 901 F.2d 325 (3rd Cir.1990). This Court believes that this is clearly the better view and that the same reasoning applies when section 524(a) has been violated. The Court adopts the reasoning of the court in *Molloy v. Primus Automotive Financial Services*, 247 B.R. 804, 816–20 (C.D.Cal.2000), finding that section 524 carries with it an "implied private right of action." The question, then, is whether the Plaintiffs have established a claim that may give rise to a remedy.

The allegations of the complaint, supplemented by counsel's representations at the hearing, show that at the time the Plaintiffs filed bankruptcy they had a debt outstanding to Dallas Leasing, aka Illinois Capitol Group ("Dallas"). Dallas was timely scheduled as a creditor and given notice of the bankruptcy proceeding. At some point, believed to be after the filing of the bankruptcy, Dallas assigned its claim to the Defendant.

In the spring of 1999, some five years after filing bankruptcy, the Plaintiffs applied for a home mortgage loan. They were then informed that the Defendant still asserted that the Dallas debt was due and owing and that the same had been assigned to the Defendant for collection. The existence of this outstanding debt disqualified the Plaintiffs from receiving the loan they sought.

The Plaintiffs contacted the Defendant "in an effort to clarify the error" and to explain that the debt had been discharged in the earlier bankruptcy. At that point the Defendant agreed to correct "the erroneous information" only if the Plaintiffs paid the debt in the amount of $2,582. The Plaintiffs paid this amount because they feared they would lose their home loan if they did not do so.

The Plaintiffs ultimately got a home loan. However, they allege "on information and belief" that the Defendant had failed to modify the "negative" credit information even after having been paid the $2,582. The result was that Plaintiffs incurred additional closing costs and fees and had to pay a higher interest rate to obtain their loan.

The Court must initially observe that the Plaintiffs' complaint evidences some misconceptions about the effect of an order of discharge. Section 727 of the Code specifies that a discharge "discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 . . . ." Sec-

tion 524(a), then, specifies the effect on the creditors of the discharge. In particular, section 524(a)(2) provides that a discharge:

> Operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor. . . .

 It is apparent from the complaint in this case that the Plaintiffs believe that the effect of the order of discharge is to wipe away the debt. But that clearly is not the case. For example, pursuant to section 524(a)(3), it is clear that a creditor that holds security for the discharged debt can still foreclose on the collateral to collect that debt. And, the debtor's discharge does not affect the ability of a creditor to seek repayment of the debt from a third party surety or guarantor. 11 U.S.C. § 524(e). Thus, the discharge does not wipe away the debt. It only serves to eliminate the debtor's personal responsibility to pay the debt.

 The distinction is important, because the initial suggestion here is that the Defendant was somehow in error, or, perhaps, in violation of some provision of the Bankruptcy Code, when it continued to report that, in its records, the Dallas debt was still due and owing, notwithstanding the order of discharge in the Plaintiffs' bankruptcy case. But the Court cannot fault the Defendant for taking this position. At least, it cannot be said that the Defendant's position in this regard, standing alone, was in any way "an act" to effect collection of the debt. Nor can the Defendant be faulted, under section 524, for refusing to correct this report. If there is a violation of section 524(a)(2), that violation must be found in the alleged position taken by the Defendant that the information would be corrected only if the Plaintiffs paid the debt.

There are many cases that consider what constitutes "an act" to force collection of a debt. The efforts of the courts to parse this phrase require the wisdom of Solomon to interpret, or at least the interpretive skill of a Florida ballot counter. It is largely a matter of the court knowing it when it smells it. Some examples may be instructive.

In *In re Olson*, 38 B.R. 515 (Bankr. N.D.Iowa 1984), a doctor's office sent a letter to a debtor. It advised the debtor that, in view of the bankruptcy, the doctor could provide no further medical services unless "you wish to pay your account voluntarily." The doctor was found to have violated section 524(a)(2).

*Olson* leaves many questions. For example, what would have been the result had the doctor merely written and said "no more medical services will be provided," in response to which the debtor, sorely in need of the doctor's services, then went to the doctor and tendered payment? Clearly, no violation of section 524 would have occurred. Would the result change if, after receiving the letter, the debtor called the doctor to inquire what might be done to enable the debtor to continue to be treated, and the doctor responded, "pay your bill"? In reality, the doctor's actions are equally coercive in each instance. It is hard to see the logic of the court's position.

In *In re Esposito*, 119 B.R. 305 (Bankr. M.D.Fla.1990), the creditor, much like the doctor in *Olson*, advised the debtor that their previous business relationship could be continued postdischarge, and the creditor would ship new merchandise to the debtor, provided the debtor paid $8,000 on the discharged debt. The debtor paid the money but, despite repeated promises and misrepresentations, no merchandise was ever delivered. The court there found that the action of the creditor was "nothing more than a subterfuge and an underhanded act to collect . . ." and violated section 524.

*Esposito* poses the same kinds of questions as did *Olson*. The *Esposito* court may well be correct that the creditor engaged in an underhanded subterfuge, and should perhaps be held liable for breach of

an agreement to send new merchandise (which gave the court the necessary aroma to discern a violation of section 524). But, what would have been the result had the creditor performed his promise and shipped new merchandise?

In *Van Meter v. American State Bank*, 89 B.R. 32 (W.D.Ark.1988), a bank required a customer to pay an earlier loan that had been discharged in bankruptcy before the bank would extend new credit to the debtors. The court there found that the loan repayment was not "voluntary" and that the creditor's action violated 524(a)(2).

It is interesting that none of the cases consider the provisions of section 525 of the Code. That section deals with discriminatory acts by a governmental unit. It specifies that a governmental unit may not discriminate against a debtor who has not paid a dischargeable debt by refusing to renew a franchise, charter or permit, or by conditioning such a renewal on payment. Thus, pursuant to 525(a), the government could not, for example, condition the grant of a new agricultural loan on a debtor's repayment of a discharged debt. Similarly, section 525 prohibits a student loan lender from denying new credit to a debtor, or conditioning the extension of new credit on the repayment of a discharged debt.

The provisions of section 525 become meaningless if the courts in the cases discussed above are correct. If section 524(a)(2) bars a lender from conditioning the making of a new student loan on the repayment of a discharged loan, as the court concludes in *Van Meter*, then it adds nothing for Congress to add section 525 to the Code. *See, Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81 (3rd Cir.1988) (Court recognizes that the Code must be read to give effect to both 524 and 525, and that it was not a violation of 524 for a credit union to send a letter to a debtor saying, in effect, "if you pay your debt we will extend continued services.").

In all of these cases the courts have split hairs into microscopic fragments. Clearly, section 524(a)(2) is implicated if the creditor, after the debtor's discharge, writes a letter to the debtor saying: "Your discharge be damned — pay your debt!" This is exactly the kind of hectoring, dunning demand that Congress intended to stop. But what of the following:

1. A creditor writes saying: "I won't provide future services unless you pay."

2. The creditor writes saying: "I would be pleased to do business with you in the future, but only if you pay what is owed."

3. The debtor says: "If I pay you my past debt, will you reinstate my credit line?"

4. The debtor says: "I very much want to do business with you again. Is there anything I can do to reinstate our business relationship?" And the lender replies: "Yes. Pay your account in full."

It is difficult to conclude that, in all of these cases, the creditor has crossed over the line.

In the instant case it is the Debtors who approached the creditor. The creditor was under no obligation under the Bankruptcy Code to change the way it reported the status of the loan. False reporting, if not done to extract payment of the debt, is simply not an act proscribed by the Code. There is absolutely no showing in this case that the Defendant had manufactured a false report in order to extract payment. To the contrary, here, nearly five years had elapsed since the order of discharge had entered and the Defendant had apparently never made an effort to contact the Plaintiffs or to otherwise seek to collect the discharged debt. Under these circumstances, the Court does not consider the demand of the creditor for payment, as a condition to changing its credit report, as "an act" to extract payment.

**72**

It appears that the real complaint here is less that the creditor demanded payment, and more with the allegation that the Defendant, having received payment, failed to perform. But that allegation is made "on information and belief." No evidence has been proffered to the Court to show whether the Defendant failed to perform, or whether the credit reporting agencies failed to correct their credit reports.

This case must be contrasted with *Esposito*. There the creditor told the debtor that new merchandise was available and would be released upon payment of the discharged debt. It is not clear from the decision whether the initial contact was made by the debtor or the creditor. After the debtor made the payment he was repeatedly told that merchandise was on its way, and relied on those representations in expending money to start a new business. It is small wonder that the court took exception to the creditor's actions.

This case is simply not the same as any of those discussed. The facts here may present a claim by the Plaintiffs for breach of contract, or perhaps even for fraud, if evidence can be generated to show that the Defendant did indeed take the money and failed to perform. Those are not claims over which this Court has jurisdiction for the same reasons that this Court does not have jurisdiction over the claims under the Fair Credit Collection Practices Act. And, as to the 524 claim set forth in the Second Claim for Relief, the Court concludes that a claim has not been established. Accordingly, the case is dismissed, without prejudice.