FILED
United States Court of Appeals
Tenth Circuit

December 8, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: LARRY RALPH GENTRY,
a/k/a Larry Gentry, officer, director,
shareholder Ball Four, Inc.; SUSAN
ELLEN GENTRY, a/k/a Susan Gentry,
officer, director, shareholder Ball
Four, Inc.,

     Debtors.

------------------

FB Acquisition Property I, LLC,

     Appellant,

v.

LARRY RALPH GENTRY; SUSAN
ELLEN GENTRY,

     Appellees.

No. 14-1441

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 13-CV-02922-REB)**

---

Christina F. Gomez (Matthew J. Ochs, with her on the briefs) Holland & Hart,
LLP, Denver, Colorado, for Appellant.

Jordan D. Factor (Patrick D. Vellone, with him on the brief), Denver, Colorado,
for Appellees.

Before **KELLY**, **HARTZ**, and **GORSUCH**, Circuit Judges.

———————————————

**KELLY**, Circuit Judge.

———————————————

Appellant FB Acquisition Property I, LLC (FB Acquisition) appeals from the district court's order affirming the confirmation of a Chapter 11 plan for Appellees and Debtors Larry and Susan Gentry. In re Gentry, No. 13-cv-02922, 2014 WL 4723879 (D. Colo. Sept. 23, 2014). Exercising jurisdiction under 28 U.S.C. § 158(d), we affirm in part and reverse in part.

Background

Debtors Susan and Larry Gentry are the sole shareholders, officers, and directors of Ball Four Inc., a sports complex in Adams County, Colorado. In 2010, Ball Four filed a voluntary Chapter 11 petition, and a year later, the Gentrys filed this Chapter 11 proceeding. Brought by a common creditor, this appeal involves aspects of both bankruptcies.

A. The Ball Four Bankruptcy

In 2005, Ball Four received a $1.9 million loan from FirsTier Bank to expand its sporting facilities and pay off a previous loan. I Aplt. App. 215. The note was secured by various Ball Four assets and Ball Four's owners Larry and Susan Gentry each personally guaranteed the loan. Id. After four years of struggling with construction defects, underfunding of the project, and an

-2-

economic downturn, Ball Four stopped making interest payments to FirsTier.  Id.

After FirsTier called the note and initiated foreclosure proceedings, Ball Four

filed for relief under Chapter 11 of the bankruptcy code in 2010.  Id.  FirsTier

filed a proof of claim in the amount of $3,572,158.12.  Id.

Ball Four proposed a plan of reorganization that provided the bank's

allowed claim would be repaid in full, plus 6 percent interest, over twenty-five

years with a five-year balloon payment, and that FirsTier would retain its lien on

Ball Four's property until the claim was paid.[1]  Id. at 215–16.  Before Ball Four's

Chapter 11 plan was approved in 2011, the Colorado Division of Banking closed

FirsTier and the Federal Deposit Insurance Corporation (FDIC) was appointed as

receiver.  Id. at 215.  Later, the FDIC conveyed all rights under the original

promissory note to 2011-SIP 1 CRE/CADC Venture, LLC (SIP).  Id.  Neither

FirsTier, FDIC, nor SIP objected to the Ball Four Plan, and it was confirmed in

August 2011.  Id. at 216.  Ball Four's case was closed in 2013.  Id. at 217.

B.  The Gentry Bankruptcy

In October 2010, a month after Ball Four filed for bankruptcy, FirsTier

sued the Gentrys in Colorado state court to collect on the guaranties.  II Aplt.

---

[1] The exact amount of the allowed claim is currently being litigated.  See Complaint, Ball Four, Inc. v. FB Acquisition Prop. I, LLC, No. 12-01036-EEB (Bankr. D. Colo. Jan. 17, 2012) (asserting breach of contract claims against lender and seeking discharge based on lender's alleged unlawful conduct).  Until that amount is resolved, Ball Four is not required to make any payments on the 2005 loan.

App. 249. In November 2011, the Gentrys filed this Chapter 11 case. Id. SIP, the successor to FirsTier's claim, asserted the Gentrys guaranteed $3,204,868.99 on the original loan. Id. SIP later amended its calculation of default interest, claiming the Gentrys actually owed $4,628,127.72. Id.

The Gentrys filed the necessary disclosures and an amended plan. The amended plan provided that the Gentrys' liability on the 2005 loan would be satisfied by Ball Four under its confirmed plan.[2]

Despite SIP's objections, the bankruptcy court confirmed the Gentry Plan in 2013. I Aplt. App. 218. The court found, inter alia, the plan was feasible, id. at 225–27, and the language of the guaranties limited the Gentrys' liability to the amount set out in the Ball Four Plan, id. at 222–25. In 2014, the district court affirmed the bankruptcy court's order. In re Gentry, 2014 WL 4723879, at *7.

In December 2014, FB Acquisition replaced SIP as the successor in interest

---

[2] The amended plan provided:

Class 6. 2011 SIP-CRE/CADC Venture, LLC. The disputed unsecured claim of the Class 6 creditor is evidenced by a personal guaranty signed by the Debtors guarantying [sic] the secured claim of the Class 6 creditor which is owed to the Class 6 creditor by Ball Four. When the Class 6 creditor's disputed claim is determined to be an allowed claim by entry of a Final Order, the allowed unsecured claim will be paid in full by Ball Four pursuant to the terms of the confirmed Chapter 11 Plan of Reorganization of Ball Four. The Class 6 creditor's allowed unsecured claim will be paid by Ball Four as provided for in Ball Four's confirmed Plan of Reorganization.

I Aplt. App. 217–18.

in the Ball Four case and in this appeal.

## Discussion

FB Acquisition appeals two decisions of the bankruptcy court:  first, that the Gentry Plan was feasible, and second, that under the language of the guaranties, the Gentrys' liability mirrors Ball Four's liability.  We will discuss each issue in turn.

### A.  The Gentry Plan's Feasibility

Even though this appeal comes to us from the district court, we review a bankruptcy court's decisions independently, examining legal determinations de novo and factual findings for clear error.  See In re Paul, 534 F.3d 1303, 1310 (10th Cir. 2008).  Because a plan's feasibility is a question of fact, we review for clear error,[3] reversing only if we are "left with the definite and firm conviction that a mistake has been made."  See In re Inv. Co. of The Sw., Inc., 341 B.R. 298, 310 (B.A.P. 10th Cir. 2006) (quoting In re Miniscribe Corp., 309 F.3d 1234, 1240

---

[3]  FB Acquisition argues that we should review feasibility de novo because the bankruptcy court "misapplied . . . the principles of res judicata" to find the Gentry Plan was feasible.  Aplt. Reply Br. at 4 (citing In re Paige, 685 F.3d 1160, 1178 (10th Cir. 2012) (ordering de novo review when the bankruptcy court relied "on improper legal standards or on proper ones improperly applied" to make a factual finding)).  This argument ignores the bankruptcy court's assurances that it did, in fact, conduct an independent review as required.  While the court relied on the feasibility of the Ball Four Plan, it also relied on other facts in the record, discussed infra.  The court did not apply an improper standard, and thus we review for clear error.

(10th Cir. 2002)).

To be confirmed by the court, a Chapter 11 plan must be feasible. 11 U.S.C. § 1129(a)(11). A plan is feasible when it is not likely to be followed by liquidation or further financial reorganization. Id. Put differently, a feasible plan is not a guarantee of success but rather offers a reasonable assurance of success. In re Ames, 973 F.2d 849, 851 (10th Cir. 1992). Debtors have the burden of proof by a preponderance of the evidence. In re Paige, 685 F.3d 1160, 1177 (10th Cir. 2012).

FB Acquisition argues this plan lacked even a reasonable assurance of success. Instead, FB Acquisition claims the court rested on the feasibility finding in the Ball Four Plan, erroneously conflating two separate feasibility analyses. In addition, FB Acquisition maintains that the court failed to consider other factors courts have found relevant: the value and marketability of the debtors' assets, the debtors' ability to liquidate personal property, valuation projections, the capital structure and earning power of a business, management ability, economic conditions, the credibility of testimony concerning the debtors' ability to repay, and other factors affecting performance under a plan. Aplt. Br. at 15–16; see, e.g., In re Rocky Mountain Land Co. LLC, No. 12-21643-HRT, 2014 WL 1338292, at *11 (Bankr. D. Colo. Apr. 3, 2014).

We disagree. The bankruptcy court stated that it undertook an independent review in light of the objections. Although its written disposition was brief, it

was not clearly erroneous.

First, it is necessary to put this feasibility determination in context by looking at the terms of the Gentry Plan. The plan directed that Ball Four would pay the claim over the next twenty-five years, and only if Ball Four did not pay would the Gentrys be liable on their guaranties. The bankruptcy court had to evaluate the reasonable success of a plan given contingencies. Such uncertainty calls for flexibility. See, e.g., In re DBSD N. Am., Inc., 634 F.3d 79, 107 (2d Cir. 2011) (noting that, in a feasibility analysis, how specific the proof required of a repayment plan must be "depends on the circumstances"). So the court considered the status of Ball Four's bankruptcy, noting that the Ball Four Plan had been confirmed and that Ball Four was not in default under its confirmed plan. Aplt. App. 225. This reliance was not unreasonable.

Furthermore, it was not the only ground for a finding of feasibility. The bankruptcy court also took note of the Gentrys' monthly salaries, id. at 217, and found that "evidence indicates the Gentrys, assuming they maintain the status quo, will likely be able to comply with the terms of the Amended Plan," id. at 227. The court also found the creditor had two safeguards in place in the event the Ball Four Plan failed. The creditor—now FB Acquisition—retains state law remedies against the Gentrys and the Gentrys' obligations will not be discharged until the loan indebtedness is paid in full. Id.

Admittedly, the bankruptcy court did not provide a written evaluation of

-7-

factors that other courts have used to guide a feasibility determination. Such an evaluation, however, is not strictly required. See, e.g., In re Inv. Co. of The Sw., Inc., 341 B.R. at 311. From its review of the evidence, the court need only determine whether the plan "offers a reasonable prospect of success and is workable." Id. The court's feasibility finding met that standard—albeit barely. Because it was based on a permissible view of the evidence, the bankruptcy court's finding of feasibility is not clearly erroneous.

## B. The Gentry's Liability as Guarantors

FB Acquisition also claims the bankruptcy court erred in limiting the Gentrys' liability as guarantors under the Gentry Plan to the amount that Ball Four, the original borrower, is ultimately determined to owe. Under Colorado law, contract interpretation is a question of law. See In re Centrix Fin., LLC, 434 B.R. 880, 884 (Bankr. D. Colo. 2010). We review de novo. See In re Paul, 534 F.3d at 1310.

"A guaranty is a collateral promise to answer for the debt . . . of another." First Interstate Bank of Denver, N.A. v. Colcott Partners IV, 833 P.2d 876, 878 (Colo. App. 1992). Under Colorado law, the extent of a guarantor's liability is determined by the language of the guaranty, and "absent language to the contrary," a guarantor's liability usually matches that of the borrower. Id. Applying that standard and finding no language to the contrary, the bankruptcy court held, and the district court affirmed, that the Gentrys as guarantors owe no

more than Ball Four, the borrower. We disagree for two reasons: first, this rule of equivalent liability is inapplicable in the bankruptcy context, and second, the language of the guaranties demonstrates the Gentrys may be liable even if Ball Four is not.

First, we turn to the law the bankruptcy court applied. To determine the extent of the Gentrys' liability, the bankruptcy court looked to Colorado law on guarantors. The court cited two cases that held a guarantor's liability matched that of the borrower. See Cont'l Nat'l Bank v. Dolan, 564 P.2d 955, 957 (Colo. App. 1977); see also First Interstate Bank of Denver, 833 P.2d at 878. Neither of these cases, however, considers the effect of bankruptcy. With its unique code of rules, protections, and purposes, bankruptcy necessarily changes the calculation.

The Bankruptcy Code provides—and multiple courts have confirmed—that discharge of a borrower's debt in bankruptcy does not affect a guarantor's liability. 11 U.S.C. § 524(e). Expressly stated in the code, that principle preserves creditors' claims against co-debtors and guarantors and provides an avenue for creditors to freely prosecute those claims. See In re Fasse, 40 B.R. 198, 200 (Bankr. D. Colo. 1984). Bankruptcy cases consistently and uniformly apply this rule. In re Vogt, 257 B.R. 65, 70 (Bankr. D. Colo. 2000); see In re W. Real Estate Fund, Inc., 922 F.2d 592, 601 (10th Cir. 1990); see also In re Sure-Snap Corp., 983 F.2d 1015, 1019 (11th Cir. 1993); F.D.I.C. v. Municipality of Ponce, 904 F.2d 740, 748 (1st Cir. 1990); In re Sandy Ridge Dev. Corp., 881 F.2d

1346, 1351 (5th Cir. 1989).

Holding otherwise would impair a guaranty. Guaranties act as a safeguard, assuring performance of a guarantor even if the borrower defaults. In fact, fear of a borrower's default often motivates a creditor to require a guarantor. See Restatement (Third) of Suretyship & Guaranty § 34 (1996); see also NCNB Tex. Nat'l Bank v. Johnson, 11 F.3d 1260, 1266 (5th Cir. 1994) (stating that a creditor "obtains guaranties specifically to provide an alternative source of repayment" in the event of bankruptcy). Extending this rule of equivalent liability into the bankruptcy context would destroy the value of a guaranty.

Second, even if we overlooked Ball Four's bankruptcy and relied solely on the language of the guaranties, we still cannot agree with the bankruptcy court's reading of that text. The bankruptcy court found no provision in the guaranties creating a greater obligation for the Gentrys than what may be owed by Ball Four. We found three. First, the Gentrys promised to pay "all of the principle amount outstanding" whether "barred or unenforceable against Borrower for any reason whatsoever . . . ." I Aplt. App. 158. Second, the Gentrys also expressly waived any defenses arising because of the "cessation of Borrower's liability from any cause whatsoever." Id. at 159. Third, the Gentrys agreed not to assert "any deductions to the amount guaranteed under this Guaranty" through a setoff, counterclaim, counter demand, or other method. Id. By signing the guaranties, the Gentrys promised to pay—especially when Ball Four could not.

-10-

Rather than looking at the guaranties on the whole, the Gentrys ask this court to focus solely on the definition of indebtedness. The Gentrys promised to repay Ball Four's "indebtedness" when they guaranteed the loan. Indebtedness, they argue, reflects "judgments . . . or transactions that . . . modify . . . or substitute these debts . . . whether[] voluntarily or involuntarily incurred." Id. at 158. The Gentrys claim Ball Four's indebtedness now reflects the bankruptcy court's judgment that modified the underlying debt. This argument misunderstands the power of a bankruptcy court. A bankruptcy court can grant a discharge, but a discharge does not extinguish the underlying debt rather it changes a debtor's liability for that debt. This distinction is important. In confirming the Ball Four Plan, the bankruptcy court did not modify Ball Four's indebtedness but its liability for that indebtedness. Therefore, the indebtedness remains unchanged—and that is what the Gentrys guaranteed.

Because we find the bankruptcy court erred in limiting the Gentrys' liability, we remand for the bankruptcy court to reconsider the amount of FB Acquisition's claim under the guaranties. Given that the bankruptcy court's determination of the Gentrys' liability may alter its assessment of feasibility, the court should also reassess the feasibility of the plan.

Accordingly, we AFFIRM in part, and REVERSE in part and REMAND.